Ruan
v.
Perry.

## William Ruan *against* Christopher R. Perry.

Tresspass will not be against a naval officer for bringing to, and taking out of her couofc a neutral vessel, if it be

THIS was an action of tresspass brought against the defendant who was commander of the *United States'* frigate *General Green*, for seizing and taking the Danish schooner *William* and *Mary* and her cargo, the property of the plaintiff.

The declaration contained two counts. One charging the defendant with seizing, arresting, and for a long time detaining the

NEW-YORK,
May, 1805.

Ruan
v.
Perry.

vessel and cargo, and conveying them towards *Jacmel* in *His-paniola*, out of the course of the voyage on which bound, by means whereof they were attacked, seized and carried away as prize, by persons on board a French barge, in the service of *Toussaint*, in consequence of which, they became totally lost to the plaintiff. The other with doing the same, and delivering up the vessel and cargo to the barge of *Toussaint* by which &c.

The cause was tried before Mr. Justice *Livingston*, at the *New-York* sittings in *January* 1805. At the trial the plaintiff examined his captain as a witness, and read the deposition of one of the crew of the schooner, from which it appeared that the vessel and cargo, both the *bonâ fide* property of the plaintiff, a Danish subject, sailed from *St. Croix* bound to *Acquin*, a port in *Hispaniola*, about ten leagues from *Jacmel*, and had arrived within 4 or 5 leagues of their destination, when they were brought to by the *General Green*, a boat from which boarded the *William and Mary*, took possession of her, ordered out all her hands but the mate, and carried them on board the defendant's ship. That, immediately after this was done, the frigate proceeded in company with the schooner towards *Jacmel*, and having arrived off that place, fired some guns, within an hour after which, an armed barge came out from that port, commanded by a white officer in uniform, said to be *Toussaint's*, and manned with negroes. That the officer came on board the frigate, delivered letters to the defendant, and received some from him. That the French officer commanding the barge, the master of the *William and Mary*, and the captain of another Danish vessel brought to by the defendant, dined with him. That about two hours after dinner was over, the defendant gave back the papers of the *William and Mary* to her captain, and sent him in the frigate's boat on board his own vessel, along side of which he arrived about the same time as the French barge, which had quitted the *General Green* a little before the departure of her own boat. That finding the French were getting on board the schooner, the captain of her claimed protection from the American officer who had conducted him from the frigate, but he without replying, went back to his own ship then lying within gunshot. Upon this the schooner and her cargo were, by the crew of the barge who had taken possession of her, carried into *Hispaniola* where they were shortly after condemned as prize to a privateer, to which the barge that had taken them belonged. That

done in pursuance of instructions from the secretary of the navy, although in consequence of being so taken out of her course,s he be captured by another nation, & condemned as prize, unless there appearsto be collusion between the captors and the defendant. If an action be bro't, charging the defendant with fraud from mere circumstances, evidence of general character is admissible. It is for the jury to determine, whether circumstances of general conduct shew a fraudulent intent.

Q

NEW-YORK, the mate of the *William & Mary* was claimed by the de-
May, 1805. fendant as an American, and given up. That within a few
days after, the *General Green* being still off *Jacmel*, 55
bags of coffee were brought on board, weighing 1000lbs. which,
as was understood and believed in the ship, was a present to
the defendant from Toussaint. On the cross examination of
the master of the *William & Mary* it appeared, that ano-
ther Danish schooner, which had also been brought to by the
*General Green*, had escaped capture by following the advice of
the defendant in keeping under his lee, and that the witness
himself entertained no idea of being captured, till he saw the
Frenchmen getting into his vessel. On the part of the defend-
ant was exhibited a part of his instructions from the navy de-
partment, by which he was directed, in order to carry into effect
the act " *for suspending the commercial intercourse between the*
" *United States and France, and the dependencies thereof*," to take
and send in vessels covered by *Danish* and other papers, if sus-
pected to be really *American.* Testimony of the defendant's gene-
ral character was then offered, and objected to, but admitted, be-
cause the imputation of a gross fraud was attempted to be prov-
ed by mere circumstances, and therefore evidence of general
character, certainly admissible. The defendant then adduced tes-
timony, fully establishing a fair and good reputation. The learn-
ed judge summed up in favor of the defendant, and charged
the jury that if such light circumstances as those relied on, were
to render officers in our navy responsible for claims like the pre-
sent, the service of the country would be greatly injured. That
the defendant was by his instructions warranted in examining
the *William & Mary*, and not liable for taking her out of her
course during the time necessary for that purpose. That it was
doubtful whether capt. *Perry* had a right to afford protection against
the barge of *Toussaint* ; but allowing he had, he certainly was not
bound to do so, but if they thought that there was any collusion be-
tween the defendant and *Toussaint*, they ought to decide in favor
of the plaintiff. The jury having found a verdict for the defen-
dant, it was submitted without argument to the court, whether
it ought not to be set aside and a new trial granted, on some
one, or all of the following grounds. 1st, Because the evidence of
character was inadmissible. 2d, Because the judge misdirected
the jury. 3d, Because the verdict was against evidence.

*Per curiam* delivered by TOMKINS J.

*Margin:* Ruan v. Perry.

Under the instructions of the defendant, he was authorized to detain a vessel a sufficient length of time to perform the duties enjoined upon him by government. In suspicious cases, and for the purpose of examination he had a right, not only to detain vessels whilst he was examining the papers and the crew, but, upon reasonable suspicion, to divert them from the course of the voyage, and to send them into port. What length of time might be sufficient to detect the frauds, which his instructions were intended to prevent, must depend upon the circumstances in each particular case; and I am not inclined to believe that the detention in the present case was unreasonable, fraudulent, or collusive. If it was, the defendant is undoubtedly liable. But that question was fairly submitted to the jury, and their decision of it I am not disposed to disturb. The judge directed them, that if they should be of opinion that captain Perry acted in collusion with the Frenchmen, they should find for the plaintiff.

<div style="float:right">

NEW-YORK,
May, 1805

Ruan
v.
Perry.

</div>

This direction was undoubtedly proper, and affords no ground to support the point of misdirection by the judge.

The evidence of character was also in my opinion properly admitted. In actions of tort, and especially charging a defendant with gross depravity and fraud upon circumstances merely, as was the case here, evidence of uniform integrity and good character is oftentimes the only testimony which a defendant can oppose to suspicious circumstances.

I cannot say I am dissatisfied with the verdict of the jury or that the same is against the weight of evidence; and am therefore of opinion the *postea* ought to be delivered to the defendant.