NEW-YORK,
May, 1837.

Gough
v.
St. John.

### Gough and Herring *vs.* St. John.

Evidence of the *good character* of the defendant, for honesty and fairness in business transactions, is not admissible, in defence, in an action on the case, for a fraudulent representation. The case of *Ruan* v. *Perry*, 3 Cains. 120, *overruled.**

Where, in such action, a defendant is charged with a *false representation*, or with a *suppression of facts*, in reference to the *solvency* of a third person, the *belief* of the defendant in the solvency of such person, is no bar to a recovery, unless the jury find that there were at least apparent good grounds for belief. Per Cowen, J.

*Prima facie*, an *inculpatory admission* must be viewed in connection with *matter in exculpation*, which comes out in the same conversation, and the latter is entitled to equal weight with the former; but the jury are not bound to credit the latter, if there be circumstances, or other proof in the case to repel it; they may then divide the confession, taking what operates against the party making the admission, and rejecting that which makes in his favor. Per Cowen, J.

This was an *action on the case*, tried at the Albany circuit in April, 1835, before the Hon. James Vanderpoel, one of the circuit judges.

The suit was brought for a *false representation* as to the solvency of one Daniel Simmons, whose financial agent the defendant was in raising money and taking up his business paper. On the 17th July, 1833, the plaintiffs held two checks, drawn by the defendant on a bank in Albany, amounting together to $650, which were endorsed by one Artcher and fell due that day. In the morning of that day,

---

* All the judges concurred in condemning the admission of the *evidence of character;* but two of them differed in respect to the *proof of intent*—Mr. Justice Cowen being of opinion, that where the *false affirmation* is proved, or a wilful and intentional *suppression of facts* shown in a matter relating to business transactions, and property is parted with in consequence thereof, and damage ensues, that the fraudulent intent follows as a *necessary inference*, and if, under such circumstances, a jury find for the defendant, a new trial ought to be granted; whereas Mr. Justice Bronson holds, that though such facts furnish sufficient evidence of a fraudulent intent, still it is but evidence, and must, with appropriate instructions, be submitted to the jury, to draw the proper conclusion. However strong (he says) the evidence may be, the *intent* must be found by the jury; it is not an unmixed question of law belonging exclusively to the court.

the defendant wrote a letter to the plaintiffs in these words :
" Messrs. Gough & Herring will please send me my two
endorsed checks for the one enclosed. I was not in the of-
fice yesterday, but Mr. Simmons wishes me to say to you,
his *check will be made good before two o'clock*. Yours, &c.
H. St. John, for D. Simmons." In which was enclosed a
check for $650, dated on the same day, signed " Daniel Sim-
mons per H. St. John." Upon receiving which the plain-
tiffs gave up the two endorsed checks, which were delivered
by the defendant to the endorser. The check for $650 was
protested. The plaintiffs produced testimony to show that
at the time of writing the letter, and for several days pre-
vious thereto, the defendant *knew* that Simmons was in fail-
ing circumstances. Part of the testimony thus produced
consisted of declarations of the defendant, accompanied
with *exculpatory asserrations*, that at the time he obtained
the two endorsed checks, he *supposed* that Simmons would
make his account good at the bank before two o'clock, as
he had given him assurances to that effect. The plaintiffs
also proved, that on the 10th day of July, seven days pre-
vious to the writing of the letter, the defendant *himself*,
as the authorized agent of Simmons, as he alleged in the in-
strument, assigned property to a large amount, belonging to
Simmons, for his own indemnity against responsibilities as-
sumed for Simmons. On the part of the defendant, *Simmons*
was examined as a witness, who proved that he had given
the assurances that he would make good his account, and
testified also as to the defendant's ignorance of his pecunia-
ry embarrassments. Witnesses were also examined, who
testified that the defendant sustained a *good character* for
honesty and fairness in dealing. This latter evidence was
objected to by the plaintiffs as inadmissible, but the objec-
tion was overruled by the judge, who charged the jury that
it was not sufficient to render the defendant liable to prove
a false affirmation or a concealment of facts, by reason of
which the plaintiffs were induced to part with the endorsed
checks, but that the plaintiffs must go further and prove that
the defendant made a false affirmation or concealed the
facts with a fraudulent intent to injure the plaintiffs ; and he

NEW-YORK, further instructed the jury, that if they believed that the de-
May, 1837. fendant supposed and believed, at the time he wrote the let-
ter to the plaintiffs and obtained possession of the endorsed

Gough checks, that Simmons would make the $650 check good, be-
v. fore two o'clock of the day on which it was given, they ought
St. John. to find for the defendant. The jury found a verdict for the
defendant. The plaintiffs move for a new trial.

*S. Stevens,* for the plaintiffs.

*A. Taber,* for the defendant.

The following opinions were delivered:

By Cowen, J. A motion is made to set aside the verdict
and for a new trial, on the grounds of error in the charge,
and that the evidence of general character was inadmissible.
I feel clear that the plaintiffs should succeed on both grounds.
I think that the proof of either a *false affirmation,* if the word
*false* implies a *scienter,* as I understand it does, or of a *con-
cealment of facts* by the defendant, if it be wilful and inten-
tional, is enough; and coupling these with the purpose of ob-
taining the checks and the consequential loss, the fraudulent
intent follows as a necessary inference, as much so as an in-
ference of malice follows the uttering of slanderous words.
A man shall always be held to intend the natural consequence
of his wrongful act. I think therefore the jury should be in-
structed, in cases of this kind, that on finding the affirmation
or suppression, and that it was practised with knowledge of
its falsehood, and with a view to obtain money or property,
which is accordingly obtained, and that all this is followed
by damage, it becomes their duty to affix the fraudulent in-
tent averred in the declaration, without any farther proof.
Should they find these facts specially, the court would be
authorized to render judgment for the plaintiff as a con-
clusion of law; and this court should grant a new trial
were the jury, notwithstanding these facts, to find for the de-
fendant.

It is supposed that, in respect to the proof of intent, the learned judge is borne out by the case of *Addington* v. *Allen*, 11 Wendell, 386, in error. But the point of intent was there purely a question of pleading, and the utmost which the case does decide is that it must be averred in the declaration. See 14 Wendell, 130, 1.

For myself I have yet to learn that our standard of legal morality is so low that a man may utter a falsehood with the view to influence another in a matter of interest, which falsehood shall prove pernicious, and yet the law withhold redress, because independent proof is not given, that the speaker intended to work the consequence which follows. This I understand to be the import of the charge. The party may hope and may pray if he pleases that the result shall be innocent. It would only add impiety to falsehood. He has been guilty of a wrong. The poisoned arrow was aimed by him, and sped from his hand ; and he must answer for the effect.

"It is," said Lord Ellenborough, in *Rex* v. *Dixon*, 3 Maule & Selw. 15, " an universal principle, that when a man is charged with doing an act, of which the probable consequence may be highly injurious, the intention is an inference of law resulting from doing the act." And this principle has been repeatedly applied to false representations as to the credit of third persons. It was so applied in *Corbett* v. *Brown*, 8 Bing. 33, by the English common pleas. There the words being literally true, though substantially false, the jury found for the defendant. The court ordered a new trial ; *Alderson*, J., saying, " the question is whether, from the statement being false within the defendant's knowledge, the court must not infer fraud." The case, too, was the mere suppression of a material fact in a letter.

The doctrine of that case was fully concurred in and sustained by the K. B. in the late case of *Polhill* v. *Walter*, 3 Barnwell & Adolph. 114. Lord Tenterden, C. J. who delivered the opinion of the court, cites *Foster* v. *Charles*, 6 Bing. 396, 7 id. 105, with *Corbett* v. *Brown*, as sustaining

the following doctrine, in which he concurs : " In order to maintain this species of action, it is not necessary to prove that the false representation was made from a corrupt motive of gain to the defendant, or a wicked motive of injury to the plaintiff. It is enough if a representation is made which the party making it knows to be untrue, and which is intended by him, or which from the mode in which it is made is calculated to induce another to ·act on the faith of it, in such a way as that he may incur damage, and that damage is actually incurred. A wilful falsehood of such a nature is, in the legal sense of the word, a fraud." In *Foster* v. *Charles*, 7 Bing. 105, Tindal, C. J. says, " It is fraud in law, if a party makes representations which he knows to be false, and injury ensues, although the motive, &c., may not have been bad. The person who makes such representations is responsible for the consequences." In the same case, 6 Bing. 396, the same learned judge said, " What has been advanced on behalf of the defendant as the legal ground of this action, is not warranted by any of the decisions. It has been urged, that it is not sufficient to show that a representation on which a plaintiff has acted, was false within the knowledge of the defendant, and that damage has ensued to the plaintiff ; but that the plaintiff must also show the motive which actuated the defendant. I am not aware of any authority for such a position ; nor can it be material what the motive was. The law will infer an improper motive, if what the defendant says is false within his own knowledge, and is the occasion of damages to the plaintiff." The learned judges of the two courts in all these cases concurred in these views, as I have put them, upon their various forms of expression. The cases are indeed all one way. They maintain a pure and lofty tone of morals, from which, I trust, our law will never be found to depart. It will never gravely say to a jury, " Though you find wilful falsehood and injury in dealing, yet you have a discretion to say whether there was an intent to defraud."

Doubtless many cases may be put, where no legal consequence would follow. It can never be imputed where the conversation is general or casual, or having no refer-

ence to pecuniary dealing. Such things are matter of imperfect obligation, and belong to the moral code upon which a man may judge for himself. The civil law cannot, in questions of this sort, go beyond the rule of property. A statement having no reference to commerce in the mind of the speaker, though it may be false, and in fact result in a loss by the hearer, is called by some of the cases a mere *naked lie*, which will not form the ground of an action.

With deference, I also think the learned judge erred in telling the jury that if the defendant believed Simmons would make good his check at 2 o'clock, they should find against the plaintiffs. Under certain qualifications, the case might certainly have been so put to the jury. That would be so if the defendant had been ignorant of Simmons' failing circumstances, or had good ground for belief. But certainly, belief cannot be set up against all rational evidence. See the opinion of the chief justice, in *Polhill* v. *Walter*. The man was insolvent, and that known to the defendant. At least, the jury had a right so to find. Supposing this, it became a material and obvious ingredient in the information by which the check holder would have been governed in his conduct; and he was entitled to information of that fact. Per Van Ness, J. in *Ward* v. *Center*, 3 Johns. R. 282. Per Kent, J. in conclusion, in *Upton* v. *Vail*, 6 Johns. 181, 184, and the charge in *Allen* v. *Addington*, 7 Wendell, 14. The simple truth would have been, " I believe Simmons will provide for his new check by 2 o'clock ; but he is in failing circumstances." That would have been the whole truth. A man giving information to another in a matter of property, is not permitted by the law to set up an arbitrary standard of judgment or belief. He may be an enthusiast, or visionary in the morality of business. He may indulge an overstrained credulity ; but he must not practice this upon others. He knows his friend to be in doubtful circumstances, oppressed by his debts, and under every temptation to commit frauds, and every liability, however honest, to be arrested in his payments and harassed with conflicting claims. But the pretence of belief on the side of this defendant is less plausible when we look to the assignment of

the 10th of July. If being, as the defendant was, an hono-
rary creditor, he could not trust to the conscience of his
principal, it detracts much from the evidence of his sincerity;
for it is not pretended that Simmons at all improved in his
condition after that day.

It is said the defendant's statements to Eddy must be ta-
ken together. *Prima facie* an inculpatory admission must
be viewed in connection with matter in exculpation, which
comes out in the same conversation, and the latter is entitled
to equal weight with the former. But the jury are never
bound to credit the latter, if there be circumstances or oth-
er proof in the case to repel it. They may then divide the
confession, taking what goes against, and rejecting that
which favors the accused. This has been held in a great
many cases. It will be sufficient to cite a few. *Smith* v.
*Hunt*, 1 M'Cord, 449. *Quick* v. *Johnson*, 6 Mart. Lou. R.
N. S. 532, 3. *Newman* v. *Bradley*, 1 Dall. 240. *Farrel*
v. *M'Clea*, id. 382. *Barnes* v. *Kelley*, 2 Hayw. 45. *Turn-
er* v. *Child*, 1 Dev. 133, 4. *Arthur* v. *Wells*, 2 R. Const.
Ct. S. C. 314. *Washington Bank* v. *Barrington*, 2 Penn-
sylv. R. 27, 35. 42, 3, 4. *Ives* v. *Bartholomew*, 9 Conn. R.
309. It is held even in criminal cases. See the close of the
charge of M'Kean, C. J., in *Respublica* v. *M'Carty*, 2 Dall.
86—a case of treason. The prisoner said he was present
at a murder, but took no part in it. The jury may believe
one part and disbelieve another; but there ought to be some
evidence to show the prisoner did more than he admitted.
*Rex* v. *Clewes*, 4 Carr. & Payne, 221. On trial for steal-
ing a ram, the carcass was traced to the prisoner's house,
and found concealed in his bed. The prosecution proved
he said that his brother had brought the carcass. Parke, J.
told the jury they were not bound to take the exculpatory
part of the confession as true, merely because it was given
in evidence; but should say, looking at the whole case,
whether they thought the prisoner's statement consistent
with the other evidence. *Rex* v. *Steptoe*, 4 Carr. & Payne,
397. What the defendant in this case had said and done,
before his exculpatory remarks to Edey, might certainly

have been considered by the jury as incompatible with the

allegation of innocence. True, after all, the defendant might have been that over credulous and confiding friend, who would believe against light and knowledge. I do not think the law will recognize a belief so baseless and visonary, and known to be so. It should at least be founded in circumstances, apparently substantial. Belief in the abstract, is not a defence.

Another conclusive ground for a new trial is the admission of testimony to character. Such evidence is, in general, confined to criminal prosecutions involving the question of moral turpitude. To this there is, I apprehend, a chain of authority unbroken in every common law country except New-York. The case of *Ruan v. Perry*, 3 Caines, 120, is to the contrary; but that is virtually exploded by later authorities in this court, and, I should presume, has not for many years been followed at the circuit to any considerable extent. I have never followed it in any instance, but have always confined such proof to the criminal side. Indeed I have hardly heard the case insisted on by any of the bar. I mean to be understood as speaking of the general distinction. I know there are exceptions. They lie in that class of actions or rather of issues where general character is drawn in question by the pleadings or the points involved in a cause. In slander, the plaintiff's general moral character is an object of inquiry, with a view to the amount of damages which he is entitled to claim. Cases of criminal conversation and breach of marriage promise, also present frequent exceptions. There are some other instances which it is unnecessary to mention. But where a civil action is brought for an injury to property, though the injury was legally criminal and involved moral turpitude, in so much that, on an indictment, character would be obviously receivable, there is no authoritative case, save *Ruan v. Perry*, which favors its admissibility. *The Attorney General v. Bowman*, 2 B. & P. 532, note *a*, is the leading English case. It settles the distinction, and has uniformly been followed at Westminister Hall. That case is adopted, and *Ruan v. Perry* vitually overruled, in *Fowler*

v. *The Ætna Fire Ins. Co.*, 6 Cowen, 673, 675, 6. The following cases also agree with the last case, and are opposed to *Ruan* v. *Perry*: *Woodruff* v. *Whittlesey*, Kirby, 60, 62; *Anderson's ex'rs* v. *Long*, 10 Serg. & Rawle, 55; *Nash* v. *Gilkeson*, 5 id. 352; *Givens* v. *Bradley*, 3 Bibb, 195, 6; *Humphrey* v. *Humphrey*, 7 Conn. R. 116, 18, 19; *Potter* v. *Webb*, 6 Greenl. 14, 18. It was said that this action charges the obtaining of checks by false pretences, which is a felony by the revised statutes. I answer as did Daggett, J., in *Humphrey* v. *Humphrey*, " Causes charging cruelty, gross fraud and even forgery are often agitated in suits by individuals; and the result not unfrequently affects the property and reputation of the party deeply ; yet no individual has been permitted to attempt to repel the proof by showing a good reputation."

It is answered to all this, that yet a new trial should not be granted; for there is a variance between the declaration and proof which would be fatal to all chance of recovery. That variance is said to consist in the averment of a false representation, while the proof is merely negative, of a fraudulent concealment. I do not so understand the letter. " Mr. Simmons wishes me to say to you his check will be made good" is only another form of saying, " It will be made good." This was a representation in the business sense of the phrase. A previous letter of the 16th was of about the same import, but that of the 17th was enough ; and if neither were so, *non constat* that the plaintiff may not obtain leave to amend the declaration, so as to cover the case of fraudulent silence.

A new trial must be granted, the costs to abide the event.

By BRONSON, J. To maintain this action, three things are necessary : The representation of the defendant must be false ; it must be made with intent to deceive and defraud ; and the plaintiff must have sustained damages by trusting to the false affirmation. The intent to defraud is usually made out by proving that the defendant knew or had reason to believe the representation false, and made

it in the course of business for the purpose of inducing the plaintiff to part with his money or property. Those facts, when proved, furnish sufficient evidence of a fraudulent intent; still it is but evidence, and must, with appropriate instructions, be submitted to the jury to draw the proper conclusion. However strong the evidence may be, the intent must be found by the jury; it is not an unmixed question of law belonging exclusively to the court.

I do not understand the charge as meaning that, in addition to the facts which have been mentioned, there must be *independent proof* of a fraudulent intent; but only that, from the facts proved, the jury must be satisfied that the representation was untrue, and was made with a fraudulent intent to injure the plaintiff. Believing the charge substantially correct, I concur in ordering a new trial, on the ground that *evidence of the defendant's character* was improperly admitted.

By *Chief Justice* NELSON. 1 concur in the opinion that a new trial should be granted on the ground that the judge erred in the admission of evidence of the character of the defendant.

New trial granted.