### THE PEOPLE *vs.* NEWTON GAY.

The fact that a witness admits, on his cross-examination, that he has been prosecuted and bound over, on a charge of perjury, will not authorize the party calling the witness to give evidence of the general good character of the witness.

A party can only give evidence of the good character of his witness, when impeaching witnesses have been first called on the other side.

By *impeaching witnesses, in such case, is meant only such as have spoken to* general character, or to character for truth.

This was a writ of error to the Columbia Oyer and Terminer In October, 1851, the defendant was tried in that court on an indictment for rape, alleged to have been committed on the person of Sarah Pilling, and found guilty and sentenced to imprisonment in the state prison at Sing Sing for the term of ten years.   On the trial, many witnesses were called and examined on both sides.   The defendant then called and examined John W. Wood, who gave evidence material in the cause.   On his cross-examination in behalf of the prosecution, the witness admitted and testified that he had been prosecuted at Coxsackie, before Esq. Heermance, in a criminal suit, on a charge of perjury, and was committed for trial.   That the perjury charged was alleged to have been committed in a suit tried at Athens on the 26th day of September last, in favor of Newton Gay against Lewis and George Raymond, who made the complaint against witness.   That George Gay, a brother of Newton Gay, was also committed.   That witness had also been sworn as a witness in another suit for George Gay against Patrick Kernan.   That

the binding over of witness on the charge of perjury was after the examination of said Pilling, the complainant, had taken place on the charge against Newton Gay for rape.

The counsel for the defendant then offered to prove the general good character of the witness, Wood, for truth and veracity, which was objected to by the counsel for the people, and the objection sustained by the court, to which the counsel for the defendant excepted. ⌐

*K. Miller*, for defendant.

The court erred in excluding the evidence offered by the defendant, of the good character of Wood for truth and veracity. (*The People* v. *Rector*, 19 *Wend.* 569; *The People* v. *Carter*, 2 *Hill*, 317.) The facts elicited upon the cross-examination of this witness had a direct tendency to impeach his credibility.

*J. H. Reynolds*, for the people.

I. The evidence of the good character of the witness Wood was properly excluded. 1. Because the evidence that he had been accused of perjury in another case did not affect his general moral character. Every man is presumed innocent. (*Jackson* v. *Osborn*, 2 *Wood*, 555; 1 *Phil. Ev.* 229, 293; *Cow. & Hill Notes*, 771: 8 *Car. & Payne*, 726.) 2. If he had admitted himself guilty of the crime, the case would have been different. His general moral character would then have been reached. 3. This case is also to be distinguished from the case where a witness on his cross-examination admits his course of life to have been infamous, for that necessarily goes to moral character. 4. The case of *The People* v. *Rector* (19 *Wend.* 569), stands alone and is unsupported by reason or authority. Justice Bronson in that case shows the judgment of the majority of the court to have been against the whole current of authority on the law of evidence. The case can not be sustained, and ought not to be followed as a precedent. 5. The supreme court, in *The People* v. *Hulse* (3 *Hill*, 309), substantially overrule *The People* v. *Rector*, and the principle of the case of *Houghtaling*

v. *Kelderhouse* (2 *Barbour*, 194) affirmed 1 *Cow. R.* is directly hostile to Rector's case and overrules it.

*By the Court,* PARKER, J.—The only question presented in this case is whether the facts shown by the prosecution on the cross-examination of Wood, authorized the defendant to introduce witnesses to show Wood's general good character for truth. It is urged on the part of the defence that the cross-examination of Wood was an impeachment of his general character which would justify the calling of witnesses to support it.

In the case of *The People* v. *Rector* (19 *Wend.* 569), Gillespie, a witness called in behalf of the prisoner, when cross-examined on the part of the prosecution, admitted that, though he had a wife and children, he had been living for two years in adulterous intercourse with a woman, who was with him at the time of the transaction in question; that he was in the habit of frequenting porter houses at unreasonable hours, had been in no business for two years, but had been living on a small sum previously accumulated, instead of paying his debts with it. The counsel for the prosecution, after proving by two witnesses that Gillespie had, previous to giving his testimony, disavowed all knowledge of the transaction, and contradicting his testimony in other respects, called one Tallman and inquired of him as to the general character of Gillespie for truth and veracity; to which he answered he knew nothing against it, never having heard his character for truth called in question. The counsel for the prisoner then offered to prove the general good character of Gillespie for truth, which was excluded. The supreme court held, Justice Bronson dissenting, that such evidence should have been received. This decision was placed upon the ground that the facts shown by Gillespie, on his cross-examination, were an impeachment of his general moral character; and a majority of the court held that when the general moral character of a witness is impeached, whether by witnesses called for that purpose or on his own cross-examination, it is competent for the party calling him to support him by evidence of general good character.

The People *v.* Gay.

In *The People* v. *Carter* (2 *Hill*, 317), a material witness for the prisoner admitted, on his cross-examination by the counsel for the people, that he had been complained of and bound over on a charge of passing counterfeit money. The prisoner's counsel then offered to prove the witness' good character for truth, which was rejected by the court. The supreme court, in a "per curiam" opinion of four lines, held that the case came within the principle established in *The People* v. *Rector*, and ordered a new trial.

If the decision in *The People* v. *Carter* is law, it is undoubtedly controlling in the case under advisement; for the question presented is, in both cases, the same. It will be observed that the law was not at all discussed by the court in *The People* v. *Carter*. It was decided on the argument, on the supposition that it was governed by the decision in *The People* v. *Rector*. Now, I think a more careful consideration of the case would have satisfied the court that it did not come within the rule laid down in *The People* v. *Rector*. In the case of Rector, the witness on his cross-examination testified to and admitted acts of gross immorality. In the case of Carter, the witness on his cross-examination did not admit or testify to any immoral conduct. He only stated that he had been complained of and bound over on a charge of passing counterfeit money. No guilt was established. On the contrary, the law presumed the witness innocent until he was proved to be guilty. The isolated fact that he had been bound over proved nothing against his moral character. Conceding, therefore, that the case of Rector was correctly decided, I think it is plain that the court erred, in the case of Carter, in supposing it was, in principle, like that of Rector.

But I think both these cases have been virtually overruled by the later case of *The People* v. *Hulse* (3 *Hill*, 309.) That was the trial of an indictment for rape. The prisoner attempted to discredit the testimony of the complainant. 1. By showing, on her cross-examination, that her story was improbable in itself; 2d. By disproving some of the facts to which she testified; 3 By evidence that her conduct was inconsistent with the idea

of the offence having been committed; and 4. By calling wit-
nesses to show that the account which she had given of the
matter, out of court, did not correspond with her statements
under oath.    It was held that this was not an attack on the
general character of the witness, and therefore evidence of her
good character was inadmissible in reply.    Justice Cowen dis-
sented, and he was the judge who delivered the opinion of the
majority of the court in the case of Rector.    In dissenting, he
says, in substance, that he still holds to the opinion he ex-
pressed in *The People* v. *Rector*, that evidence of contradictory
statements is such an impeachment as to authorize evidence of
general character.

It is not necessary in this case to go so far as to question the
law in the case of Rector.    There the continued immoral conduct
of the witness was proved.    In the case of Carter, and in the
case under consideration, there had only been a charge made
of a single moral delinquency, and the presumption of law
would be in favor of the witness's innocence.

But the questions presented in the case of Rector and in the
case of Hulse, were in principle the same.    In the latter case,
as well as in the former, the improbability of the story, the
facts disproved, and the different and contradictory statements
of the witness, were evidence of a want of moral character.    I
think the decision on this point in *The People* v. *Rector*, which
rested mainly on one or two English *nisi prius* cases, was a
departure from a salutary and well settled principle, and ought
not to be sustained. "The general rule," says Bronson, J., in *The
People* v. *Hulse*, " is that a party can only give evidence of
good character of his witness, where impeaching witnesses have
been first called on the other side.    By impeaching witnesses,
I mean such as have spoken to general character, or character
for truth; and not such as have merely given a different account
of the facts, or proved that the witness has made declarations
out of court inconsistent with his testimony on the trial.    The
question of character must be made by the opposite party and
not by the one who calls the witness."

The only English case, in which a departure has been al-

The People *v.* Gay.

lowed from this rule, was that of *Rex* v. *Clark.* (2 *Stark. Rep.* 213.) There the prosecutrix admitted that she had, some years before, been twice sent to the house of correction, on charges of having stolen money from her master, and Holroyd, J., admitted evidence to show that her subsequent conduct had been good. This *nisi prius* case is the one referred to by the writers on the law of evidence, as authority for calling witnesses to general character to sustain a witness attacked on cross-examination. It is like the case of *The People* v. *Rector,* and unlike this case and that of the *People* v. *Carter,* in one important feature. On the cross-examination, the immorality was established, and not merely shown to have been charged. The witness had been convicted of the offence charged. But it is unlike the case of Rector in another feature equally important: it was only the subsequent conduct which was shown to be good; that is to say, a subsequently acquired good character was allowed to be proved. Whereas, in the case of Rector, the general good character was permitted to be proved, although the witness had admitted his immoral conduct. The decision in the case of Rector went still further than any which preceded it. But the decision in *Rex* v. *Clark,* was not recognized as sound law in the subsequent case of *Doe* v. *Harris.* (7 *Car & Payn,* 330.)

In *Jackson* v. *Walker* (4 *Esp. R.* 50), one of the subscribing witnesses to a will, imputing fraud to the other two, in procuring the will, and they being dead, witnesses were called to their good character, in order to repel the imputation. And this seeming exception to the general rule was sanctioned in *Rowe* v. *Reed* (3 *Moore & Payne,* 4; *S. C. Bing.* 435), where similar evidence was received. But it was not supposed that such evidence would have been allowed if the witnesses had been living; and in the case last cited, all the judges placed the decision on the ground, that such evidence was secondary proof, receivable from necessity. And in *The Bishop of Durham* v. *Beaumont* (1 *Camp.* 210), Lord Ellenborough, said that if, in *Jackson* v. *Walker,* the witness had been alive, they must have been personally adduced, when their character would

have appeared on their cross-examination. These cases, in my opinion, have no bearing upon the question under consideration They relate to proof of the good character, not of the witness, but of third persons, who are deceased and can not therefore be called to explain certain facts proved, which tend to their impeachment. And yet these cases, together with that of *Rex* v. *Clark*, are those relied upon by Justice Cowen in the conclusion to which he came in *The People* v. *Rector*.

In the *Bishop of Durham* v. *Beaumont*, Lord Ellenborough refused to admit evidence in the support of the character of a witness, who stood contradicted by another witness. In *Dodd* v. *Norris* (3 *Camp.* 519), which was an action for seducing the plaintiff's daughter, she was called as a witness for the plaintiff, and was cross-examined at length on the part of the defendant, to show she had been guilty of extreme indelicacy and great levity of conduct. Lord Ellenborough refused to allow the plaintiff to call witnesses in support of her general character, and said she could have an ample opportunity to explain on her reexamination, as far as truth could permit, the facts elicited on her cross-examination. And in the later case of *Doe* v. *Harris* before cited, Coleridge, J., refused to permit the defendant's counsel to call witnesses to prove the good character of a witness, whose moral character had been attempted to be impeached, on his cross-examination. The decisions in the English courts, with the single exception of *Rex* v. *Clark*, which I have shown to have been overruled, agree in the general rule that witnesses can only be called to show general good character of a witness, where witnesses have first been called to impeach it.

In *Russell* v. *Coffin* (8 *Pick.* 143), the deposition of a witness taken out of court, was introduced for the purpose of contradicting his evidence in court; and the party who called the witness was not permitted to sustain him by evidence of his general good character. Parker, Ch. J., sa d, it had never been decided that such evidence of general good character was admissible, when the witness was contradicted, either by his own declarations or by other witnesses. So in *Rogers* v. *Moore*,

decided in 1833 (10 *Conn.* 13), evidence of the general good character of a witness was held to be inadmissible, where his general character had not been impeached, although an attempt had been made to impair his credibility on his cross-examination, to prove facts inconsistent with his testimony, and to show that he had been privy to a fraud in a deed under which the plaintiff claimed title. In giving the opinion of the court, Church, J., reviews all the English cases above cited and comes to the same conclusion arrived at in *The People* v. *Hulse.*

I think it is fortunate for the administration of justice in this state that the departure from this rule in the case of *The People* v. *Rector* has been overruled and the uniformity of the law maintained in *The People* v. *Hulse.*

All concede that witnesses ought not to be called to sustain character, until such character is impeached. But it is said that the facts elicited on a cross-examination, showing moral delinquencies, constitute such an impeachment. This can not be, because it is well settled that evidence to discredit a witness must be to his general character and not to specific acts. (*Wike* v. *Lightner*, 11 *Serg. & Rawle*, 198.) It is certain a witness can not be called to prove specific acts by way of impeachment; and there is no more reason for allowing the specific acts proved on the cross-examination to constitute such an impeachment. There is no danger that the witness or the party calling him will suffer injustice by a too willing disclosure, on cross-examination, of discreditable circumstances. The feeling and interest of the witness have naturally an opposite tendency. Such unfavorable circumstances, when proved, do not constitute moral character; they are only an element in it. That they are not regarded as making up moral character, is evident from the fact that a witness can not be called to prove such circumstances by way of impeachment. It is no answer to say they are a part of the moral character, for general character only can be shown.

In a criminal case, evidence of the general bad character of the defendant can not be received until evidence of his general good character has been introduced. This rule is reversed in

regard to a witness, who can not be sustained until his general character has been assailed. In both cases, general evidence only can be introduced. In neither case, on either side of the question, can particular acts be shown. In accordance with this general principle, it was held in *Gough* v. *St. John* (16 *Wend.* 646), in an action on the case for a fraudulent representation, that evidence of the good character of the defendant was inadmissible. And in *Houghtaling* v. *Kelderhouse* (2 *Barb. S. C. R.* 194; 1 *Coms.* 130), it was decided in an action for slander, that the plaintiff could not be permitted to introduce evidence of his good character, in reply to evidence introduced by the defendant tending to prove the truth of the charge.

It would greatly multiply the issues to be tried, and needlessly increase the prolixity of trials, and I think, also, tend to mislead the jury from the more important questions of the case, if general character may be tried on every contradiction between witnesses, or whenever a witness shall admit, on his cross-examination, some previous immoral conduct on his part. Still greater would be the evil, if such general character is to be inquired into in every case where a witness admits on his cross-examination that he has been accused of some offence. If an isolated case of accusation only is an impeachment of general character, calling for evidence in support of it, the presumption of innocence is violated, the law that requires general and not specific evidence is disregarded, and the issues to be tried are increased beyond measure or endurance.

I am satisfied that the true rule and the only safe one is that laid down by Bronson, J., in *The People* v. *Hulse*, that a party can only give evidence of the good character of his witness when impeaching witnesses have first been called in, on the other side.

The judgment of the Columbia Oyer and Terminer must therefore be affirmed.(*a*)

Justice Wright dissented.

(*a*) The judgment in this case was affirmed by the Court of Appeals. (3 *Selden R.* 378.)