BENJAMIN F. SIMPSON, *et al.*, v. JOSEPH WESTENBERGER.

GOOD CHARACTER AND REPUTATION FOR HONESTY, *When Inadmissible in Evidence.* Evidence of good character and reputation for honesty and fair dealing, is not admissible on the part of a plaintiff claiming possession as mortgagee of personal property under a chattel mortgage, in an action of replevin brought by him against an officer, to recover the possession of the property levied upon in attachment proceedings against the mortgagor, when the mortgage is assailed as fraudulent as against the creditors of the mortgagor.

*Error from Leavenworth District Court.*

REPLEVIN brought by *Joseph Westenberger* against *Benjamin F. Simpson* and George F. Sharritt, to recover the possession of a certain stock of goods. May 20, 1882, plaintiff recovered judgment against defendants, who bring the case here. The opinion sufficiently states the facts.

*Stillings & Stillings,* for plaintiffs in error.

*Wm. McNeill Clough,* and *Lucien Baker,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Joseph Westenberger and Simon Lowenthal were partners under the firm-name of S. Lowenthal & Co., doing business in Leavenworth city from January 1, 1880, to about the 10th day of January, 1881, at which time they alleged they dissolved, Westenberger claiming that he sold his interest in the firm to Lowenthal for the sum of $28,473.84, for which, after deducting $852.84, placed to his

credit on general account, he took thirty-six notes of Lowenthal for $767.25 each, due respectively in two, three, four, five, six, seven, eight, nine, ten, and so on, up to thirty-seven months after date, in alleged settlement of the partnership. On the 14th day of November, 1881, he obtained from Lowenthal a chattel mortgage upon his stock of goods in the store at Leavenworth to secure thirty-four of said notes, and on the same day filed the mortgage in the office of the register of deeds of Leavenworth county. He also claimed that he took immediate possession of the property under the mortgage, with the consent of Lowenthal. About this time, Morse, Sheperd & Co. brought an action in the United States circuit court for the district of Kansas, against Lowenthal, to recover the sum of $4,141.69, and caused a writ of attachment to issue, which was placed in the hands of the United States marshal, Benjamin F. Simpson; and thereunder George F. Sharritt, a deputy United States marshal, levied upon the goods embraced in the chattel mortgage. Thereupon Westenberger instituted an action of replevin in the district court of Leavenworth county, against Simpson and Sharritt, to recover possession of the goods. He obtained judgment in that court, and it is contended before us that this judgment must be reversed, because the court permitted evidence to go to the jury to prove his good character and reputation for honesty and fair dealing. His counsel claim this evidence was relevant and legitimate, and therefore properly admitted, and refer to 1 Greenl. Ev. (10th ed.), § 54, pp. 76–79, and the cases there cited, especially *Ruan v. Perry*, 3 Caines, 120. It is stated in 1 Greenleaf, *supra*, "and generally in actions of tort, wherever the defendant is charged with fraud from mere circumstances, evidence of his general good character is admissible to repel it." In the note thereunder, it is said: "The ground on which evidence of good character is admitted in criminal prosecutions, is this: that the intent with which the act charged as a crime was done, is of the essence of the issue, agreeably to the maxim, *Nemo reus est, nisi mens sit rea;* and the prevailing character of the party's mind as evinced by the

previous habit of his life, is a material element in discovering that intent in the instance in question. Upon the same principle, the same evidence ought to be admitted in all other cases, whatever be the form of proceedings, where the intent is material to be found as a fact involved in the issue." The basis of the text and the note seems to be the case of *Ruan v. Perry*, supra, where the court held that "in actions of tort, and especially charging a defendant with gross depravity and fraud, upon circumstances merely, evidence of uniform integrity and good character is oftentimes the only testimony which a defendant can oppose to suspicious circumstances." This doctrine, it is said generally, was recognized by the court in *Fowler v. Ætna Fire Ins. Co.*, 6 Cow. 673, and afterward in *Townsend v. Graves*, 3 Paige, 455, 456. If the rule laid down in Greenleaf and supported by the authority of *Ruan v. Perry*, supra, controls, then the testimony complained of was admissible. But, on the other hand, if the doctrine attempted to be established in *Ruan v. Perry*, supra, and by the text in Greenleaf, is not good law, the evidence was not only irrelevant and incompetent, but prejudicial to the opposing parties, and therefore they would be entitled to a reversal of the judgment. It is stated in 1 Wharton Ev., § 47: "Although in criminal cases good character may be proved by the defendant, as tending to substantiate the plea of not guilty, yet in civil suits such evidence has been held to be irrelevant. When the question comes whether the defendant has committed a crime, then as a matter of indulgence to one whose life or liberty is at stake, good character, such as would make it improbable that he would have committed the crime in question, may be introduced among the elements from which the jurors are to make up their judgment. But whether it be because in a civil issue between two private parties, neither has the right to claim such an indulgence from the other, or whether it be because most civil suits grow out of, or may be supposed to grow out of honest misconceptions of rights, Anglo-American courts have agreed in holding that so far as concerns the

proof in civil issues, the character of either party is, as a rule, irrelevant." In reference to *Ruan v. Perry*, supra, the author says: "This case is sometimes cited as authority for the position that in actions for tort, charging criminality, the defendant may put good character in evidence. In *Fowler v. Ins. Co.*, 6 Cow. 675, and *Townsend v. Graves*, 3 Paige, 455, *Ruan v. Perry* is cited with qualified approval; but it is emphatically repudiated in *Gough v. St. John*, 16 Wend. 646; *Platt v. Andrews*, 4 Comst. 493, and *Porter v. Seiler*, 23 Pa. St. 424." In *Fowler v. Ætna Fire Ins. Co.*, supra, cited as supporting *Ruan v. Perry*, the court refer to the latter case, but refer approvingly to *Att'y General v. Bowman*, 2 Bos. & Pul. 532, and decide that evidence of general good character is inadmissible by way of defense in a 'civil action in which a party is charged with a specific fraud, and that in civil actions the character of every transaction must be ascertained by its own circumstances, and not by the character of the parties. In *Townsend v. Graves*, supra, also cited by Greenleaf as recognizing *Ruan v. Perry*, the real question before the chancellor was, whether the complainant who charged the defendant with having fraudulently substituted another number in a package of lottery tickets, in the place of the prize ticket, could be permitted in the first instance to give evidence of the general bad character of the defendant. The chancellor decided, as such evidence had no bearing whatever on the matter in issue in the cause, it was wholly inadmissible, and ought not to have been received. In *Gough v. St. John*, supra, the defendant was sued in an action on the case for a false representation as to the solvency of a third person. The representation was in writing, and verbal testimony was offered tending to show that the defendant knew it to be false. To rebut this charge, proof that the defendant sustained a good character for honesty and fairness in dealing, was offered and admitted. Cowen, J., held that the fraudulent intent was a necessary inference of law from the falsity of the representation, and that the evidence of character was improperly admitted. He cited and condemned the case of *Ruan v.*

*Perry,* as favoring the general admissibility of evidence of character in civil actions for injuries to property. The other judges agreed that the evidence was improperly admitted, but said nothing as to the case of *Ruan v. Perry.* They denied, however, that fraud was in such cases an inference of law. In *Smets v. Plunkett,* 1 Strob. (S. C.) 372, it is said: "Evidence of the plaintiff's general character was no doubt intended to show that he was incapable of having first appropriated a portion of defendant's lumber dishonestly and then rendered a false account of sales; and the evidence tended toward this purpose. If it could have laid bare the heart of the plaintiff and ascertained really the strength of his moral principles, it would have been highly influential. But examinations in court into general good character according to reputation usually distinguish only between the two classes, the good and the bad, without nice discrimination between the infinite degrees and varieties which exist of either class. Of most persons, there is really no general reputation as to character, and of some, the general reputation is widely different from the truth, which a full knowledge of their motives, principles and habits would disclose. Sometimes upon trials, the good are overthrown by unexpected assault, and often the bad burnished and strengthened by the ready testimony which their influence procures in their favor, while many of their neighbors who think ill of them, shrink from being examined, or being examined, cannot say that the suspicions which they entertain, and which they feel rather than know that others also entertain, have been uttered so as to constitute a bad reputation. In investigations concerning character, feeling and prejudice are more frequently exhibited than in inquiries upon any other subject. The number of witnesses is often extended far beyond the limit which upon other topics the court would indulge, and if there be contrariety of opinion, the matter is usually left at last in great uncertainty. These considerations suggest the propriety of adhering closely to the rules which have been established to regulate the admission of the evidence of

reputation concerning general character. If in every case where an act of dishonesty is imputed, the imputation may be met by such evidence, then there are few cases into which such evidence might not be introduced. Trials would be insupportably tedious, and the result of a trial would as often depend upon the popularity of a party as upon the merits of his case." Again, in *Wright v. McKee*, 37 Vt. 161, the early case of *Ruan v. Perry* is cited as having been overruled, and as an argument for excluding evidence offered by a defendant to sustain a good character for honesty and integrity in a civil action brought to recover the value of a package of bank bills and silver delivered by the plaintiff to the defendant to carry to a third person, which it was alleged the defendant converted to his own use, the court says: "In criminal cases the respondent is permitted to introduce evidence of this kind. In civil cases, where the question of character is directly in issue, and material as to the amount of damages, as in slander and seduction, it is admitted. This, we think, is the extent to which it ought to be admitted in civil suits. In criminal cases the law allows it to the respondent out of tenderness to help him, if it may, in his necessity, as it gives him the benefit of every doubt. And even in criminal cases the law regards it of value only when the other evidence leaves the case in doubt, and general good character may be fairly invoked to rebut suspicious circumstances. Many considerations concur in rejecting such evidence in civil cases. Evidence of this character has but a remote bearing as proof to show that wrongful acts have or have not been committed, and the mind resorts to it for aid only when the other evidence is doubtful and nicely balanced. It may then perhaps serve to turn the wavering scales. Very rarely can it be of substantial use in getting at the truth. It is uncertain in its nature, both because the true character of a large portion of mankind is ascertained with difficulty, and because those who are called to testify are reluctant to disparage their neighbors, especially if they are wealthy, influential, popular, or even only pleasant and obliging. It is

mere matter of opinion, and in matters of opinion men are apt to be greatly influenced by prejudice, partisanship, or other bias of which they are unconscious. And in cases which are not quite clear, they are apt to agree with the one who first speaks to them on the subject, or to form their opinions upon the opinions of others. The introduction of such evidence in civil cases whenever character is assailed, would make trials intolerably long and tedious, and greatly increase the expense and delay of litigation. It is a kind of evidence that might easily be manufactured, is liable to abuse, and if in common use in the courts as likely to mislead as to guide aright. The authorities are quite unanimous in excluding such testimony. It is the settled rule of the common law." In Connecticut, in *Humphrey v. Humphrey*, 7 Conn. 116, and in *Norton v. Warner*, 9 Conn. 172; in Maine, in *Potter v. Webb*, 5 Greenleaf, 14; in Pennsylvania, in *Anderson v. Long*, 10 Serg. & Rawle 55, and in *Porter v. Seiler*, 23 Pa. St. 424; in Indiana, in *George v. Drummond*, 7 Ind. 19; in Kentucky, in *Morriss v. Hazlewood*, 1 Bush, 208; in Missouri, in *Gutzwiller v. Lackman*, 26 Mo. 168; in South Carolina, in *Smets v. Plunkett*, supra, the same doctrine is recognized. See also *Attorney General v. Bowman*, 2 Bos. & Pul. 532, note; 1 Phil. Ev. 467, and Cowen & Hill's notes thereto; 1 Starkie's Ev. 366; *Barton v. Thompson*, 56 Iowa, 571; *Dudley v. McCluer*, 65 Mo. 241.

From an examination and consideration of the authorities, our deduction in the premises is, that the decision of *Ruan v. Perry*, has been overthrown; that the rule in Greenleaf in regard to the admission in civil actions of evidence of good character in favor of a party charged with fraud, is incorrect, and that in actions like the one at bar, such evidence is irrelevant and incompetent. As an excuse for the admission of the evidence concerning the good character of Westenberger, it is urged that the counsel representing the defendants below opened his case to the jury with the statement that Westenberger and Lowenthal were brothers-in-law; that they had been leagued together for twenty years or more for the pur-

pose of swindling their creditors; and that such counsel upon the trial went back to the years 1864, 1865, 1866, 1867 and 1868, to show by evidence that Westenberger and Lowenthal had been partners; that they had failed; that they had made an assignment, which was afterward set aside; that Westenberger afterward went through bankruptcy, and was discharged. In the first place, the remarks of counsel to the jury do not appear in the case, and we must decide the questions at issue upon the record. But if counsel made any improper or irrelevant remarks in the opening of his case, such conduct would not authorize the opposing side to introduce, against objection, irrelevant and incompetent testimony. And if any irrelevant testimony was offered upon the trial by defendants below, this would not sanction, against objection, the introduction of opposing testimony of like kind on the other side. But the evidence of Westenberger's transactions referred to, may have all been relevant and competent as tending to show whether he was the owner of $28,473.84 of assets in the partnership of S. Lowenthal & Co. at the time of the alleged dissolution on the 10th of January, 1881, and therefore as tending to show whether the chattel mortgage assailed, secured an actual indebtedness of the amount named therein. (*Wallach v. Wylie*, 28 Kas. 138.)

Error is also alleged in the direction of the court to the jury. As plaintiffs in error did not ask for additional instructions, nor indeed for any instruction, and as it seems to be admitted that the instructions given are good law when reduced to abstract propositions, the objection to the charge of the court, under the circumstances, is not sufficient to set aside the verdict and the judgment. On account, however, of the admission of the irrelevant and incompetent evidence touching the character and reputation of Westenberger for honesty and fair dealing, the judgment of the district court must be reversed, and the cause remanded for a new trial.

VALENTINE, J., concurring.

BREWER, J., not sitting.