POWERS *v.* ARMSTRONG.

Opinion delivered April 11, 1896.

EVIDENCE—TESTIMONY AS TO CHARACTER.—Evidence of general reputation is not admissible, in civil suits, to rebut imputations of fraud or misconduct.

APPEAL—HARMLESS ERROR.—The erroneous admission of evidence of the good character of the vendee of property, upon the question whether or not the transfer was a fraud upon the creditors of the vendor, is not reversible error where the undisputed evidence shows that the vendee was a *bona fide* purchaser.

Appeal from Johnson Circuit Court.

JEREMIAH G. WALLACE, Judge.

STATEMENT BY THE COURT.

In January, 1895, appellee brought an action of replevin against appellant for a stock of merchandise,

which he alleged to be worth $1,685, situated in the store-house of Joe Brown, in Coal Hill, Ark. Appellant answered, justifying under certain writs of attachment placed in his hands upon orders of the court in suits of *B. Baer & Co.* v. *N. E. Armstrong & Co.*

The evidence at the trial of this cause showed that on the 3rd day of January, 1894, J. S. Armstrong, who was the father of N. E. Armstrong, and who lived at Ozark, Ark., bought from his son, N. E. Armstrong, for eighty cents on the dollar, his stock of merchandise at Coal Hill, Ark., which amounted to $1,384, and that he gave him $500 for $700 or $800 worth of book accounts; that he paid his son for the stock and book accounts by surrendering to him $1,848 of his son's notes which he held, and that, after giving his son credit for the $1,848, he still owed him $242.28. A good deal of evidence was introduced to show the *bona fides* of appellee's claim against his son, and, as far as the record, as it now stands, shows, N. E. Armstrong did owe his father about $2,200 at the time he bought him out in January, 1894. N. E. Armstrong was a very poor business man, and constantly lost money. J. S. Armstrong, however, was a thrifty, prosperous trader, and, according to the testimony of J. B. Carter, cashier of the Ozark Bank, could always get from the bank any amount of money he needed, and frequently indorsed, and afterwards paid, the notes of his son, N. E. Armstrong. J. S. Armstrong testified that in December, 1893, he contemplated going into business with his son; but when, in January, 1894, he looked more fully into his son's condition, he found that he was going to fail, and so bought him out, to save what he was owing him.

N. E. Armstrong testified that he had never made a statement of his financial condition to any commercial agency, but when shown the statement of August 23, 1893, made to R. G. Dun & Co., in which he claimed a

total net worth of $1,450, and stated that he had no liabilities of any sort at that time, admitted that the statement was made in his own handwriting, and that at the time he made the statement he owed his father, J. S. Armstrong, $1,200, and about the same amount of commercial debts, and the total amount put into the business by him was about $150; and, when asked how he reconciled this statement to Dun & Co., made in August, 1893, to the effect that his net worth was $1,450, and he owed nobody, with his sworn statement now on the stand that at the time he owed his father $1,200, and about the same amount to other parties, he said he could not reconcile the statements.

R. M. White testified that he was present when N. E. Armstrong sold to appellee, and that appellee took possession of the property at once, and left him in charge to manage it.

Eugene Adler testified that he was a member of the firm of B. Baer & Co., wholesale grocers of Fort Smith, Ark., and that in December, 1893, he sold N. E. Armstrong $50 worth of groceries on the faith of his statement that appellee (his father) was going into business with him, and that afterwards, when he saw appellee in Fort Smith, he asked him if he was going into business at Coal Hill with his son, and he replied that it was so reported, but he had not done so yet, and he did not know what he would do.

Appellee offered in rebuttal J. M. Moore, J. M. Crompton, A. S. McKennon, Dr. Brown, and T. B. Crawford; and each was asked if he knew J. S. Armstrong's general reputation, in the neighborhood where he lived, for truth, honesty and morality, and each answered, "Yes." They were each then asked if that reputation was good or bad, and each replied that it was good. To all of appellee's testimony in rebuttal touching his good character, appellant objected.

After the charge of the court, and the verdict of the jury for appellee, the court made an order taxing all the cost, both in this suit and in the suit of B. Baer & Co. v. N. E. Armstrong, against appellant; and afterwards, on a motion filed to retax costs, an order was made modifying the first order, and taxing one-half of the costs to appellants, and one-half to appellee. The first order does not appear in the record.

*Winchester & Martin*, for appellant.

It was error to admit evidence proving appellee's good character. His character was not put in issue, nor assailed. Stephens' Dig. Ev., p. 115, note; 16 Wend. 646; 47 N. H. 136; 4 Gray, 574, 581; 28 Kas. 756. The good character of a party cannot be shown except in answer to impeaching evidence from the other side. 4 N. Y. 493; 1 Comst. 530; 34 Pa. St. 114. The appellee obtained an unfair advantage before the jury by this procedure. 1 Gr. Ev., sec. 55.

*Virgil Bourland*, for appellee.

1. When a party is charged with fraud from mere circumstances, evidence of his general character is admissible to repel it. 3 Caines, 120; 3 Esp. 284; 1 Greenl., Ev. sec. 54.

2. But, even if this were not true, appellant is not injured, for the proof clearly shows that he was not entitled to a verdict in any event. 18 Ark. 469; 40 *id.* 168; 43 *id.* 535; 31 *id.* 365; 28 *id.* 531; 18 *id.* 469; 23 *id.* 121; 44 *id.* 556.

Admissibility of testimony as to character.

HUGHES, J., (after stating the facts.) It appears from the record in this case that the only error complained of by appellants is that the court allowed appellee to prove a good character by witness McKennon and others. There is nowhere in the record any testimony which reflects upon either the truth, honesty, or morality of appellee, J. S. Armstrong; and since he was

the plaintiff in the trial below, and was presumed in law to have a good character, until it was attacked or impeached, and since there was no evidence of bad character, and nothing before the court or jury which put his character in issue, was it error to allow witness McKennon and others to testify as to his good character? The law credited him with having a good reputation, until that reputation was assailed. Evidence of character is not admissible in civil suits to rebut imputations of fraud or misconduct. *Boardman* v. *Woodman*, 47 N. H. 136, and cases cited. Such evidence is in general confined to criminal prosecutions involving the question of moral turpitude. The case of *Ruan* v. *Perry*, 3 Caines, 120, cited by counsel for appellee to the contrary is exploded by later authorities. *Gough* v. *St. John*, 16 Wendell, 646, and cases cited. In the case last cited it is said: "But where a civil action is brought for an injury to property, though the injury was legally criminal, and involved moral turpitude, in so much that, on an indictment, character would be obviously receivable, there is no authoritative case save *Ruan* v. *Perry*, which favors its admissibility." The case of *Simpson* v. *Westenberger*, 28 Kas. 756, is directly in point, and holds that, in a case like the one at bar, evidence of good character is not admissible. This is a civil action, and the character of the appellee was not put in issue in the action, and the defendant relied solely upon the facts shown in evidence to support his contention. We are of the opinion that the admission of this evidence was improper, the character of the appellee not having been put in issue or impeached. *Pratt* v. *Andrews*, 4 N. Y. 493.

But, while it was error to admit this evidence, and while there is evidence from which the jury might have found fraud upon the part of N. E. Armstrong, there is no proof that the appellee, J. S. Armstrong, participated

*When error not prejudicial.*

in his fraud. On the other hand, the evidence shows that J. S. Armstrong bought the goods, accounts, etc., in controversy, in good faith, to realize a just debt owing to him by N. E. Armstrong; that he paid a fair price, and that the goods were insufficient to pay his debt; and that he delivered up the notes of N. E. Armstrong, and credited him on his account against him,—in other words, paid for the goods and choses in action, and took immediate possession and control of them. We do not believe the jury could have found otherwise than they did, had the evidence as to appellee's good character not been admitted. We are therefore of the opinion that, though it was error to admit this in evidence, its admission was not prejudicial, and therefore not reversible error.

The judgment is affirmed.