By the Court:

Barbour, C.J.
The evidence given upon the trial of this action on the part of the plaintiff was sufficient, if credited, to establish the following facts, viz. :
The plaintiff, who was a woman sixty-two year’s of age, lame and walked with a crutch, in attempting to cross one of the streets of this city upon the ordinary street crossing, was knocked down and run over by a horse and cart belonging to the defendants, through the negligence of their driver, whereby her leg was so broken and injured as to render its amputation neces. sary, and to confine her to her bed some five months. The jury found a verdict for $2,500 against the defendants, and this appeal is brought by them from the judgment thereupon entered.
Sundry exceptions to the rulings of the court, upon evidence, were taken upon the trial, as well as to the denial of a motion to dismiss the complaint, to refusals to charge as requested, and to portions of the charge as made, all of which will be considered in their order.
First.—The defendants permitted the plaintiff’s counsel, with* out objection, to ask a policeman what became of the driver after the accident, and after an answer had been given, which was responsive to the question, objected to such answer. *291 The objection came too late. The subject-matter of the inquiry may have been irrelevant; but a party cannot permit an improper question to be answered, in the hope that it may be favorable to him, and then object to the answer because it is against him.
Second.-—One of the witnesses was asked by the defendants’ counsel whether the plaintiff had sufficient time to get out of the way if she had not been lame, and an exception is taken to the exclusion of that question. I think the ruling was proper. The question was not only hypothetical, but any proper answer to it must have been a mere opinion, founded upon the facts in regard to positions, distances, and speed, which the witness had already stated to the jury.
Third.—The permission given to the policeman to state the manner in which he was discharged from the police force was not only just and proper, but such statement could not have harmed the defendants; for neither the fact that the witness was discharged from the force for alleged drunkenness, nor that he was unjustly accused, legally affected his credibility.
Fourth.—The admission of evidence to prove what the driver did immediately after the occurrence of the accident was also right. The question whether he attempted to rein in his horse at once, or recklessly drove on without stopping to assist the person injured, was a material one, as tending to show the animus of the driver. Indeed, in one aspect which the case assumed, it was, probably, very important. For while the driver testified that his horse was excited and unmanageable, the witness Nash stated that the driver stopped the animal within three or four yards beyond the place where the accident occurred; a circumstance, certainly, from which the jury may have inferred that the driver erred in supposing his horse to have been so ungovernable that he could not be stopped or turned aside before reaching the place where the plaintiff was crossing the street.
Fifth.—The question as to the weight of the cart does not seem to have been of much importance, but it cannot be said, to have been wholly irrelevant, inasmuch as the extent of the injury caused by a heavy cart or a light one would, probably, be some *292 what different. Be that as it may, however, it is not easy to see how the admission of proof of the weight tended to the injury of the defendants.
Sixth.—The sixth exception is covered, substantially, by the foregoing remarks, upon the second.
Seventh.—The refusal of the court to dismiss the complaint upon the closing of the plaintiff’s proofs was proper. The plaintiff had proved that the driver, although approaching the woman in a right line, at the rate of about four miles per hour, contented himself with hallooing at her, to warn her of her danger, and, so far as the case then showed, without attempting to stop or slacken the speed of his horse, or to turn him aside, continued on his course, and ran over her. Clearly, that was enough to warrant the jury in finding that the injury to the plaintiff was caused by the negligence of the driver; and there was no evidence before them tending to show that any negligence 'of the plaintiff contributed to the accident beyond what might properly be inferred from the fact that she was attempting to cross the 'street although old and lame. A party is chargeable with negligence in actions of this character, for doing or omitting to do those acts which a careful, prudent person, having a due regard for his own safety and the rights of others, would perform or refrain from; not for a failure to exorcise the utmost possible precaution against danger. The question, then, was, whether a careful, prudent person, in the physical condition of the plaintiff, would have attempted to cross the street, or whether, being upon it, she did all that a careful woman, in that condition, would have done; and that was a question which it was proper for the jury to determine. For, although the learned judge who delivered the opinion of the Court of Appeals in the case of Gonzales v. The Harlem RR Company, goes so far as to say that questions of negligence, where the facts are uncontroverted, are always to be determined by the court as matters of law, it is impossible for me to imagine that the court designed to cast" upon the judges of inferior tribunals the responsibility of determining, in all cases, and in every combination of ciroum *293 stances, the question whether a party has done what a careful, prudent person would have performed. Such a decision would deprive juries of powers which they have exercised for centuries in actions of this character, and would leave to them only the right of deciding upon the credibility of witnesses, in cases of conflicting evidence, and of fixing the amount of damages.
Eighth.—The evidence offered to show that the plaintiff was in the habit of becoming intoxicated was properly excluded. The fact as to whether she was intoxicated at the time was, of course, important, and' the evidence upon that point was admitted.
Ni/nth.—The motion for a nonsuit after all the evidence was in, ought to have been denied, as it was. It was proper for the jury to consider and determine whether the horse was so excited and uncontrollable for the time as to render it impossible' for the driver to stop him and rein him in; and if not, whether the act of the driver in continuing upon his course, without slackening his speed, notwithstanding he saw the plaintiff, when twenty or twenty-five feet from her, as he says, directly in his path, was or was not such an act as a careful person, having a proper regard for the rights of another, would have committed.
Tenth.—This point of the counsel for the appellants covers two distinct and separate exceptions to what are assumed to be portions of the judge’s charge. One is “to that part in which the court charged the jury, in substance, that a person crossing the street had the right of way, and a driver was bound to care for him;” and the other, “to that part in which the judge charged, in substance, that a person crossing the street was not bound to look either way, but had the right to look straight before him, and it was the duty of the driver to keep out of Ms way, and not come into collision with Mm.”
It will be observed that each of these exceptions is duplex, and covers two distinct legal propositions, and that in both the exception is to the instruction (substantially) that it is the duty of a driver to care for the footman, and avoid confine: into collision *294 with him. That portion of the charge, at least, there can- be no doubt, is entirely correct. Conceding then, for a -moment, -that the remaining matter covered by the exceptions in question is erroneous, still, it appears to me,- the exceptions should be overruled ; for the rule is well established that an exception to a portion of a charge; containing in that part- several legal propositions, one or more of which are correct, cannot be sustained (Oldfield v. N. Y. & Harlem R.R. Co., 14 N. Y., 310; Elton v. Markham, 20 Barb., 343 ; Vallance v. King, 3 id., 548; Potter v. Seymour, 4 Bosw., 140 ; Nevins v. Bay State Co., 4 id., 225; Cronk v. Canfield, 31 Barb., 171; and see 11 N. Y., 416 ; 6 id., 233 ; 7 id., 266; 24 How., 172, 236; 30 Barb., 246).
But I prefer, with the concurrence of my brethren, to put the decision of the court on this particular question upon other grounds. The charge upon this subject, as delivered, and which is probably the part intended to be covered by the exceptions in question, was in these words:
“ In my view, as a general proposition; a foot passenger, crossing at the usual crossing, has a right of way, and, having that right of way, there is thrown upon the driver the responsibility of avoiding collision. That is the general proposition. It is, as you will observe from the remarks I will hereafter make, limited in certain cases. A foot passenger, going upon a straight line and crossing the street upon a regular crossing, there being nothing to dall his attention to any vehicle coming, is not bound to stop and look around to see whether any thing is approaching. There being nothing which would naturally attract the attention of an ordinary passer-by, he has a right to assume that the way is clear, and to act upon that presumption in his conduct. How, although I have stated the principle to be that a foot passenger has the right of way, yet he cannot use that right of way in an arbitrary manner. He cannot, after starting upon his passage across a street, if he see a vehicle coming át a reasonable rate of speed, and it is evident to him that he cannot, by using his ordinary faculties, cross the track, if the carriage continue in its course, without a collision, he is not then at liberty, although *295 he may have a right of way, to go rushing right into that vehicle.
“As I understand it, the counsel for the plaintiff advocates the principle that the driver is, under all circumstances, to prevent running over a foot passenger. That I do not think is law. Drivers are bound to use caution—such reasonable caution and care as the circumstances require; that is all they are bound to use. But they must use that in the view"which I have stated; that is, that foot passengers have the right of way, of priority, and that they are not bound, unless there is something to attract their attention, to be looking out all the time to see whether any vehicle is coming. The driver, looking straight ahead, puts the responsibility upon them to see whether there is any one crossing their tracks; and, having these two things in view, they are so to conduct themselves with such care and caution as that they will not run over or come into collision with the foot passenger, assuming that that foot passenger will take the ordinary and reasonable means of protecting himself. How, the question as to whether there is negligence or not depends upon the particular circumstances of each case. What would be negligence in one case may not be negligence in another; and so, again, what in one case would not constitute negligence in that particular case, in another case that very thing may constitute it, depending upon other circumstances connected with it.”
Taking these remarks of the learned judge, in their connection, as an entirety, and giving a legitimate and proper construction to his language with reference to the question as to whether either, or both, or neither of the parties had been guilty of negligence resulting in the injury, this portion of the charge appears to me to be quite correct. As an abstract proposition, it is true the drivers of horses have the same right to travel along the carriage-way of a street with their teams and vehicles that foot passengers have to walk there. The legal right of each class to use that part of the street for purposes of travel is absolute, but it is not exclusive and, in that sense, it may be said that there is no priority of right in either. But it is to be con *296 sidered that the danger of injury by collision is, wholly, upon the side of the footman; and the right of personal protection which every man possesses, together with that moral and legal obligation to refrain from doing an injury to his person which is imposed upon all others, gives to the foot passenger such a prior light in the street as to make it the duty of drivers of horses to turn aside or stop their teams, if necessary, at whatever cost of property it may occasion, to avoid doing an injury to people who may be crossing, or standing in their path.
. Eleventh.—There was no exception to the part of the charge referred to in this point, and, therefore, the objection cannot be considered here. The' request to charge, as matter of law, that the plaintiff was guilty of negligence in being upon the street while lame and infirm, was properly denied. It was a question of fact, and ought to have been submitted to the jury, as it was.
Twelfth.—The objection that the verdict was against evidence cannot be sustained. The driver himself testified that he saw the plaintiff, when, twenty or twenty-five feet from her, directly in his path, and yelled at her, expecting that she would get out of his way, and then continued on in his course, until she was knocked down and run over by his cart. It is true he stated that he tried to stop his horse, and to turn him out; but, as the animal was only trotting at the rate of about four miles an hour, and the driver stopped him without difficulty within three or four yards from the place where the accident occurred, the jury probably disbelieved that statement, and found that the injury was occasioned by his gross negligence, as they well might. I am of opinion, too, that the evidence was insufficient to justify a finding that the plaintiff was guilty of any negligence which contributed to the accident. The fact that she failed to look up and down the street before she began to cross is quite unimportant, inasmuch as there was no evidence that the horse and cart were then within sight, and so near that a person of ordinary prudence, in her condition, would have refrained from crossing, because of that, if such person had seen them coming. Although *297 her failure to look may, therefore, have been negligence, it cannot be said that such negligence contributed to the accident. Indeed, as this lame old woman had nearly crossed the street (one of the wide avenues) before the collision, it is reasonable to suppose that the horse and cart’were far away when she started; so far that a prudent person in her condition might well attempt to pass over, under the supposition that she could do so before the horse and cart would reach the crossing; or, if not, that the driver would turn out of his course and avoid her, as it would be his duty to do.
Thirteenth.—The verdict does not appear to me to award damages which are excessive. The plaintiff must not only have suffered great pain and much mental anxiety, but she had lost her leg, and had been confined to her bed for several months.
The judgment should be affirmed, with costs.
McCunn, J., dissented.