## Case No. 16,751.

### UNITED STATES v. WOOD.

[Nowhere reported; opinion not now accessible.]

## Case No. 16,752.

### UNITED STATES v. WOOD et al.

[13 Blatchf. 252.] [1]

Circuit Court, N. D. New York. Jan. 20, 1876.

ARMY PAYMASTER—ACTION ON OFFICIAL BOND—EVIDENCE.

On the trial of a civil action by the United States against the sureties on the official bond of an assistant paymaster in the army, it is erroneous to allow evidence to be given by the defendants of the general conduct of the officer in the discharge of his official duties, and of his mode of life and pecuniary circumstances, even though he is dead.

[Cited in Hawloetz v. Kass, 25 Fed. 767.]

[Error to the district court of the United States for the Northern district of New York.]

This was an action against the sureties on the official bond of one Scholefield, an assistant paymaster in the army, brought in the district court. At the trial, there was a verdict for the defendants [David S. Wood and others] and the United States brought the case into this court by a writ of error.

Richard Crowley, U. S. Dist. Atty.

Conkling, Lord & Coxe, for defendants in error.

WALLACE, District Judge (after disposing of sundry exceptions). The remaining exceptions in the case involve the question, whether it was error to permit the defendants to give evidence of Scholefield's general conduct in the discharge of his official duties, and of his mode of life and pecuniary circumstances. It is not surprising that the peculiar hardship of the position of the defendants upon the trial induced the learned judge who presided to give them the benefit of any doubts that might arise upon questions of evidence. Scholefield died in 1869, and it appeared inferentially that he was never aware that he had been charged with the $10,000 in dispute. After his death, many of the papers were lost or destroyed, and the person who had been his clerk while assistant paymaster died while prosecuting an examination into the matters in contro-

versy. Hodge had been convicted as a defaulter for a large amount, and was in prison under his sentence, and no assistance from him could be reasonably expected. The defendants were, therefore, deprived to a great extent of means of defence, and, as they were strangers to the transaction involved, their situation appealed strongly to the court, and justified the utmost liberality in the application of the rules of evidence to their defence. These considerations, while they might and justly should influence the determination of doubtful questions upon the trial, cannot be permitted to prevail over convictions which are arrived at upon a deliberate review of the case.

I am constrained to hold that the evidence excepted to was erroneously received. In criminal cases it is always competent to permit the accused to give evidence of general good character. But, in such cases, where the offence is clearly proved, it is incumbent on the court to instruct the jury that such evidence is not entitled to great consideration. In civil actions, the authorities are adverse to permitting such evidence, irrespective of the nature of the action. In the case of Ruan v. Perry, 3 Caines, 120, it was held to be admissible in actions where the party offering it is charged with fraud or a tort involving moral turpitude, and this doctrine has been quoted approvingly by other authorities, when limited to cases where the wrongful act complained of is established by circumstantial evidence or by the testimony of witnesses of doubtful character (Townsend v. Graves, 3 Paige, 455, 456); but the later decisions in the same state repudiate it and adopt the rule in England, that the evidence is only admissible in a direct prosecution for a crime (Flower v. Aetna Fire Ins. Co., 6 Cow. 675; Gough v. St. John, 16 Wend. 646). Upon the trial of an information for keeping false weights it was excluded (Attorney General v. Bowman, 2 Bos. & P. 532, note); also, in an action for divorce (Humphrey v. Humphrey, 7 Conn. 116). Nor does the fact that the person is dead whose fraudulent or wrongful act is the subject of the action permit any relaxation of the rule (Anderson's Ex'rs v. Long, 10 Serg. & R. 55; Nash v. Gilkeson, 5 Serg. & R. 352); and the reason for the rule is, that the evidence must apply to the particular fact in dispute (Givens v. Bradley, 3 Bibb, 195), or, as stated by Chief Justice Savage, "the character of every transaction must be ascertained by its own circumstances, and not by the character of the parties." The evidence received in this case is more objectionable than that which I have referred to. Its effect was not to prove the general character of Major Scholefield, but his special characteristics as a paymaster. The effort was to prove the general manner in which he discharged his official duties. It was none the less incompetent because this evidence was given by those who spoke from

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

personal observation of his conduct. However exemplary his conduct may have been, and however faithful and accurate the discharge of his general official duties, evidence of this could not throw any light upon the particular transaction involved. Numerous cases can be cited, where the issue was one involving negligence, which hold that proof of negligence or of care upon other occasions than the one which is the direct subject of investigation, cannot be permitted. Barker v. Savage, 1 Sweeny, 288; Warner v. New York Cent. R. Co., 44 N. Y. 465. As well might it be contended that it would be competent to show, in an action involving the question of usury or fraud or breach of contract, the general conduct of the person charged to be inconsistent with the particular transaction involved, as to assert it of the evidence admitted here. Even in criminal cases, where the vital inquiry was as to the conduct of the deceased at the time when he was killed, evidence to show what his usual conduct was under similar circumstances has been held incompetent. State v. Thawley, 4 Har. [Del.] 562; State v. Barfield, 8 Ired. 344; Jolly v. State, 13 Smedes & M. 223. The tendency of this evidence was inevitably to mislead the jury. Very many of the cases which I have cited were those where the admission of such testimony was held fatal to the verdict.

I do not deem it necessary to discuss the exceptions taken to other evidence received upon the trial. The judgment of the court below must be reversed, and the cause remanded for a venire de novo.