Nov. Term,
1855.

CHURCH and Others *v.* DRUMMOND.

CHURCH
v.
DRUMMOND.

The written undertaking required to authorize the issuing of a writ of attach- ment, may, under the R. S. 1852, be executed by a surety alone.

Evidence of the general reputation of a defendant is admissible in a civil proceeding, only where his character is in issue.

The evidence, even in that case, must be confined to the reputation of the party, with special reference to the nature of the question in issue.

That an improper question was allowed to be put to a witness, where the record does not disclose what or whether any answer was made to it, can not be assigned for error.

On the trial of a proceeding in attachment, the defendants will not be allowed to give evidence of declarations made by themselves when the sheriff executed the writ.

To make an objection to evidence available on error, the record must show that the ground of objection was pointed out to the Court below.

Whether an assignment of goods was made with a fraudulent intent, is, by the statute, a question for the decision of the jury, and not of the Court.

APPEAL from the *Huntington* Court of Common Pleas.

STUART, J.—In *August,* 1854, *Church* and others procured an order of attachment against *Drummond,* under the 6th specification of section 156, 2 R. S., p. 63. *Drummond* appeared and pleaded. The issue joined was submitted to a jury. Verdict and judgment for the defendant. The attachment-creditor appeals.

The charge on which the order of attachment issued was, that *Drummond* was about to sell, convey and otherwise dispose of his property, subject to execution, with the fraudulent intent to cheat and hinder his creditors.

The record presents several questions for consideration. First in order is the sufficiency of the written undertaking of the attaching creditors. That undertaking is provided for in sec. 160, 2 R. S., p. 64, which reads—" The plaintiff, or some one on his behalf, shall execute a written undertaking, with sufficient surety, to be approved by the clerk, payable to the defendant, to the effect that the plaintiff will duly prosecute his proceeding in attachment, and will pay all damages which may be sustained by the defendant, if the proceedings of the plaintiff shall be wrongful and oppressive."

*Monday,
November 26.*

The written undertaking, in the case at bar, is thus: "We undertake that the plaintiffs shall duly prosecute their proceedings in attachment in this action, and pay to the defendant all damages which he may sustain if the proceedings of the plaintiffs shall be wrongful and oppressive. *William C. Smith.* Approved by *Joseph Wiley*, clerk, by *J. R. Coffroth*, deputy."

On this undertaking, together with the affidavit, &c., the order of attachment issued.

Before appearance entered, counsel for *Drummond*, as *amici curiæ*, moved to quash the order of attachment, on the ground that the undertaking was not signed by the plaintiffs, or any one on their behalf, but only by the surety. It is contended that the statute contemplates both principal and surety should sign the undertaking. This would seem to be a fair deduction from the language. But counsel for the creditors insist that this undertaking by the surety alone, is in conformity to the form given by the same revised statutes in such cases. Form No. 44, 2 R. S., p. 352. The statute declares, further, that these forms "may be used and shall be sufficient in all cases where they are applicable." Taking these statutes together, it is difficult to say that the undertaking by the surety alone, approved by the clerk, is not, at least, *prima facie* sufficient. Legislative forms will be respected where, in a preliminary step like this, they appear to apply. *Bringhurst* v. *Pollard*, 6 Ind. R. 452.

There is more difficulty where the form given is a pleading which lacks some substantial allegation. There, perhaps, the ruling might be different.

In this case the security of the party whose property is attached, is the end to be attained. The object of the act seems to be sufficiently complied with when the undertaking is by a surety whose solvency is satisfactory to the clerk; especially as the party is not precluded from showing the insolvency of the undertaker. *Blaney* v. *Findley*, 2 Blackf. 338.

The motion to dismiss for want of a sufficient undertaking, was correctly overruled.

The next point is, did the Court err in permitting the defendants to introduce evidence as to their good character for honesty? The question asked and answered was, "What was the general character of the defendants for honesty, on or about the 30th day of *August*, 1854?" The general rule laid down by *Starkie*, and very generally adhered to by the *English* Courts, is, that evidence of general character is not admissible in civil proceedings, unless the character of the party be directly in issue. Stark., pt. 4, 366. *Greenleaf* admits the *English* rule to the same extent. 1 Greenl. Ev., ss. 52–3, *n.* The evidence of character, in civil cases, is thus confined within narrow limits. In the text of *Greenleaf*, it is said that where the defendant is charged with fraud from mere circumstances, evidence of his general character is admissible to repel it. 1 Greenl. Ev., ss. 54–5. But the cases he cites can scarcely be said to sustain his position. And in a note he admits that the case chiefly relied upon, *Ruan* v. *Perry*, 3 Caines' R. 120, has been strongly doubted, and feebly supported by the Courts even in *New-York*. It is believed the general current of *American* decisions adheres to the *English* rule. That rule is, that only in cases where the character is in issue, can evidence of general reputation be given. Even then it must be confined to the reputation of the party, with special reference to the nature of the question in issue.

But in this case the evidence was not in the record. We can not even divine how the question was answered. If the answer was, that the character of the *Drummonds* was bad, the plaintiffs could not have been injured by it. It should appear that some answer pertinent to the inquiry, and unfavorable to the plaintiffs, had been given. The bare fact that an improper question had been put, which elicited only a vague or impertinent answer, or perhaps no answer, as that the witness was ignorant of their general reputation, could not prejudice the creditors, nor be assigned for error. *Morton* v. *White*, 5 Ind. R. 338.

The next error is presented in a more tangible form. It goes to the following question and answer, addressed

to the sheriff while on the stand as defendant's witness. "What did the *Drummonds* say to you, while executing the writ of attachment about having all of their creditors share in their assets? "They told me if they submitted to this, their other creditors could not come in. *Quincy* told me if they compromised then, their other creditors could not come in, which they wanted them to do."

Such a course of examination, pursued by defendant's own counsel, was inadmissible. It would have been competent for the creditors to have called out what was said on that occasion—but not for the defendants themselves. A party can not be permitted to manufacture evidence for himself. The bill of exceptions shows that this was *Drummond's* witness, and therefore repels the presumption that those answers were elicited by cross-examination. Nor could the mere ministerial duty of the officer be any part of the *res gestæ* in the sense claimed. All the *res gestæ* which could belong to the case had transpired before the writ issued.

But it is argued that the ground of objection was not pointed out to the Court. That rule is well settled. The reason of the rule is this: a general objection to documentary or other intricate instruments of evidence, would impose on the Court great labor, delay and difficulty in deciding, unless the ground of the objection was stated. The real point of the objection might often escape the attention of the Court and the opposite party. In most cases the operation of the rule is eminently beneficial. *Wakeman* v. *Jones,* 5 Ind. R. 454. Even in those cases where the ground of objection is obvious, it is no great hardship to suggest it to the Court and have that fact appear in the record. In many cases it might be safely presumed that the Court below did not need to be informed of the ground of objection. But if the rule were once relaxed in favor of plain cases, we should be constantly embarrassed in its application to cases differing but little from each other. It is safer, better policy to adhere to it strictly. It is fair to the Court below, to parties, and to this Court; and it accords with the spirit of the

new code, which holds all objections not specially made at the proper time to be waived.

The creditors further complain that the Court refused to give the following instruction to the jury, viz.: "An assignment of goods to a creditor, with intent to prevent another creditor from levying upon them or selling them on execution, even when the debtor directs them to be divided among all his creditors, is fraudulent, and an intent to assign would be an intent to hinder and defraud his creditors." To this ruling the creditors excepted, and now assign it as error. We think the instruction was correctly refused. The question of fraud, under our statute, is not one of law for the Court, but of fact for the jury to determine. *Hubbs* v. *Bancroft*, 4 Ind. R. 388. The facts assumed in the instruction, were not fraud *per se*, but only circumstances from which fraud might or might not be inferred. Every assignment operates more or less to delay creditors. If mere delay of creditors were conclusive on the question of fraud, every assignment would be fraudulent. The assignment and its attendant circumstances are to go to the jury, for them to determine whether it is made with a fair or a fraudulent intent.

In the situation of the record, the error committed in the Court below by the admission of evidence, is unavailing.

*Per Curiam.*—The judgment is affirmed with costs.

*J. R. Coffroth*, for the appellants.

*D. D. Pratt* and *S. C. Taber*, for the appellee.