Filed April 13, 1893.

---

No. 900.

INDIANAPOLIS JOURNAL NEWSPAPER COMPANY v. PUGH.

LIBEL.—*When a Charge is Libelous.*—*Adultery.*—*Right of· Action.*—*Charge Tending to Degrade, etc., the Character Actionable.*—Where an article published in a newspaper charges a female of previous good repute for chastity with having traveled with a married man for five months, as his wife, when in fact she was not, and that she was turned out of a hotel, and that the revelation·had caused a sensation in.the community where it transpired, such publication constitutes actionable libel as to the woman.

EVIDENCE.—*Libel.*—*Character, How Proved.*—*Specific Acts of Immorality, When not Provable.*—Where, on trial of an action for libel, the defendant had proved that the plaintiff, a female, had associated and consorted with certain persons, and with them had visited a saloon and drank intoxicants, and proof was made that her reputation for morality, at and prior to the time of the publication complained of, was bad, evidence was not competent to prove that the said persons with whom she associated and consorted were persons of bad reputation for morality, as character is only provable by general reputation, and not by specific acts of immorality wholly disconnected from the acts charged in the publication.

SAME.—*Character.*—*How Proven.*—*Specific Traits of Character.*—In proving one's reputation, the particular kind or trait of character to be proved must be determined from the nature of the issue, and the proof of reputation generally is too broad, when it overreaches the particular character in issue, and character can only be proven by general reputation.

SAME.—*Irrelevant Testimony, When not Rebuttable.*—Where an irrelevant question is permitted to be put to a witness and answered, without objection, it does not entitle the opposing party to introduce evidence of facts collateral to the issues to rebut such testimony.

Indianapolis Journal Newspaper Company *v.* Pugh.

SAME.—*Irrelevancy.*—*Admitting Over Objection.*—*Presumption of Prejudice.*—*Libel.*—Where, in an action for libel, the plaintiff was permitted to testify, over objection and exception, that her father was in the army three years; that he came home from the army at the close of the war, afflicted with consumption, and died of that disease, such testimony was irrelevant and erroneous, the overruling of the objection having the effect to place such evidence before the jury as proper for their consideration, and, being illegal, it will be presumed to have influenced the result of the suit, unless the contrary is shown.

MISCONDUCT OF COUNSEL. —*Argument Before Jury.*—*Improper Remarks.*—*Refusal of Court to Instruct Jury to Disregard.*—*Reversible Error.*—Where, in an action for libel, one of the attorneys for the plaintiff, in argument to the jury, said: "The defendant does not rely on the evidence, to defeat this action, but on its influence. I have heard it said on the streets here, more than once since this action began, 'you can't down the Journal in Hamilton county,'" and against this statement counsel for defendant at the time protested, and moved the court to require counsel to withdraw it from the jury, which the court refused to do, remarking in the presence of the jury that the jury would be governed by the evidence in the case, to which refusal of the court the defendant at the time excepted, and counsel for plaintiff did not withdraw or modify said statement, such statement of counsel, and especially the latter part thereof, commencing with, "I have heard it said on the streets," etc., there being no evidence to justify such remark, amounted to reversible error under the circumstances.

ARGUMENT OF COUNSEL.—*Duty of Trial Judge to Regulate.*—*Misconduct of Counsel in Argument.*—Where a case is being argued before the jury, it is the duty of the trial judge to regulate the argument, and to see that counsel are held within the limits of legitimate debate, and this the judge may do of his own motion; and where remarks to the jury are properly objected to, and motion is made to have the remarks withdrawn, and the court remarks that "the jury will be governed by the evidence," such remark by the court can not be construed to be a ruling sustaining the motion, or as a direction to the jury to disregard the remarks of counsel, and being sanctioned by the refusal of the court to interfere, the remarks of counsel, if erroneous and prejudicial, will amount to reversible error.

APPEAL.—*Appellate Court Practice.*—*Ruling of Trial Court.*—*Presumption of Correctness.*—The rule that the rulings of the trial court will be presumed to be correct, will not operate where it affirmatively appears that a material error has been committed.

INSTRUCTIONS TO JURY.—*Damages.*—*Amount of Recovery.*—*Expenses of Suit.*—*Libel.*—Where, in an action for libel, the court instructed the jury that if the publication was libelous, but made without actual malice, and plaintiff sustained no special damages, they should allow her only com-

pensatory damages, and that compensatory damages are such as will pay the plaintiff for her expenses and trouble in carrying on this suit, and disproving the alleged slanderous publication, such instruction was erroneous as being misleading and tending to confuse the jury, the phrase, "trouble in carrying on this suit," being too vague and indefinite, even if expenses were recoverable, but in this kind of action they are not.

From the Hamilton Circuit Court.

*F. Winter, J. B. Elam, G. W. Stephenson* and *W. R. Fertig,* for appellant.

*W. R. West, W. A. Kittenger, L. M. Schwinn, T. J. Kane* and *T. P. Davis*, for appellee.

REINHARD, C. J.—In the court below the appellee brought this action and recovered of the appellant the sum of $3,000 for libel. The overruling of a demurrer to the complaint is the first alleged error upon which the appellant seeks to have the judgment of the lower court reversed. The publication complained of is as follows:

"EVANGELIST WOODWORTH'S BUSINESS MANAGER PROVES TO BE A RASCAL.

"(Special to the Indianapolis Journal.)

"MUNCIE, October 19.—Almost three weeks ago Mrs. Maria B. Woodworth, an evangelist of some note, began a series of meetings at this place. She was accompanied by a number of persons who were prominent workers at each service, and who were the loudest shouters and offered the longest prayers. Among this number was one Thomas Dempsey, a rather shrewd, intelligent looking fellow. He appeared in the role as business manager for the evangelistic aggregation. He preceded the company, made contracts, and arranged for holding the camp meetings, and then returned to assist in the work. Yesterday closed Mrs. Woodworth's engagement at this place, and they left last evening for Indianapolis. Quite a sensation

was created in this city just prior to their departure by the arrival of a little lady, handsome and intelligent, who claims to be, and is, the legal wife of Dempsey. Dempsey, however, has been for the past five months traveling with a woman who he alleged was his wife. Mrs. Dempsey says her husband left her about five months ago, since which time she has been unable to hear from him. She lives with her parents near Fairmount, and with them enjoys the esteem of all. Her parents are among the most reputable people in that locality. While the Woodworth combination are holding meetings near her home he claims to have been converted, and afterward, when they were conducting meetings at Windfall, he joined them, and since that time has been continuously with the party, and away from his wife. Mrs. Dempsey says these people have tried to deceive and delude her in all the ways possible. Her letters, asking information as to his whereabouts, would either be returned to her or remained unanswered. She says she will proceed at once to procure a divorce from him. She returned to her home by way of Anderson this afternoon. Dempsey and an Italian, who is a member of the evangelistic party, sneaked out of the city early this morning. A special to the 'News,' of this city, this evening, from Anderson, says the deserted wife of Dempsey, the camp meeting manager, arrived in the city at 10 o'clock this morning. The affrighted camp meeting manager, who has been dodging her for two days, had men watching the depot, and when she came in he was notified, and then lost no time in securing a carriage and leaving the town. Evidently he fears arrest. The alleged Mrs. Dempsey was sent to Farmland last night, after being turned out of a hotel here. It is explained that Mr. and Mrs. Woodworth knew nothing of any suspicious relations existing between these parties, and it is to be hoped that this is true. At any rate, the revelation has created

such a sensation as Muncie has not known in a long time."

Appellant's counsel contend that this publication, if it is libelous at all, is so only as to Dempsey, but not as to the appellee. In this view we are unable to concur. The complaint charges, after the usual introductory panegyric on the plaintiff's good character, that the defendant was publishing and editing a daily newspaper in Indianapolis, called "The Indianapolis Journal," which has a general circulation; that it published said matter, in its paper of a certain date, of and concerning the plaintiff and her character for chastity, and for the purpose of injuring the plaintiff and bringing her character for chastity into disrepute, and to degrade and disgrace her, and bring her into contempt and ridicule, and that the matter published was false, and was published maliciously. It is further alleged that the woman with whom it was charged Dempsey traveled, and whom he held out as his wife, was meant to be the plaintiff; that the expression, "the alleged Mrs. Dempsey was sent to Farmland last night after being turned out of a hotel here," was meant to refer to the plaintiff, and that she had been turned out of a hotel at Muncie, Indiana, and that by the words "suspicious relations existing between these parties" it was intended to charge that the plaintiff and Thomas Dempsey had been cohabiting together as husband and wife, and that plaintiff was guilty of adultery with said Dempsey, a male person and married man, etc., and that the article was meant to be understood, and was understood, to charge that plaintiff and Dempsey had been living and cohabiting together as husband and wife, and that plaintiff had been guilty of adultery with him, and the "revelation" spoken of in the article as creating a "sensation," was to the citizens of Muncie and vicinity, and implied, and was meant to charge, that they had learned that plaintiff and Dempsey had been traveling and cohabiting together as husband and wife for five months, and

had committed adultery during said time, which created a sensation in said city of Muncie. Other averments of the complaint serve to identify the plaintiff as the person referred to in the publication, and to show the application of the words and the meaning they were intended to convey, and that they were so understood.

The demurrer admits every allegation that is well pleaded. In this case it admits that the words were published of and concerning the plaintiff, and that they were false. If they are such as tend to degrade, disgrace, or injure the character of the plaintiff, they are sufficient, even if they do not impute a crime. *Doan* v. *Kelley*, 121 Ind. 413; *Prosser* v. *Callis*, 117 Ind. 105; *Crocker* v. *Hadley*, 102 Ind. 416.

To charge a female of previous good repute for chastity (which she is presumed to possess, without any averment of the fact), with having traveled with a married man for five months, as his wife, and that she was turned out of a hotel, and that the revelation had caused a sensation in the community where it transpired, is actionable libel. The complaint was sufficient, and the demurrer was properly overruled.

The appellant filed several answers, among them being a plea of justification. Subsequently all the answers, but that of justification, were withdrawn. The appellee filed a reply in denial, and, upon the issues thus joined, the cause was tried by a jury. A large number of causes are specified in the motion for a new trial.

Upon the trial evidence was introduced by the appellant, tending to show that, previous to the publication of the alleged libelous matter, the appellee associated with another female who worked with her at the same hotel; that the two roomed together, visited a saloon and drank intoxicating liquors together, and that they walked the street together; and, at one time, were dressed in men's attire. The appellant further introduced evidence tending to prove that

appellee's reputation for morality in the neighborhood was not good at or previous to the time of the alleged publication. There was also evidence from the same source tending to show that appellee associated with a certain man (whose name we need not set out here). The appellant offered to prove that these persons, with whom it was alleged the appellee associated and consorted, were persons of bad reputation for morality, but over appellant's exception the evidence was rejected.

We do not think there was any error in this ruling. True, the appellee's character was put in issue. But this can be proved only by general reputation, and not by specific acts of immorality, wholly disconnected from the acts charged in the publication. Townshend on S. and L., (4th ed.), p. 670, section 407. The association, by the appellee, with males or females of bad repute, is a specific act, and is not competent evidence of the general reputation of appellee.

Nor did the fact that the appellee had testified, while on the stand, in response to a question by her counsel, that the female with whom she consorted was a decent, respectable girl, so far as she knew, and that she knew nothing against them, render the evidence competent in rebuttal. The appellee should have objected to the question when it was asked. The mere fact that an attorney is, without objection, permitted to ask an irrelevant question, and obtain an answer to it, can not be used to open the doors for the admission of evidence of facts purely collateral to the issues. Such a course would tend to make the litigation almost interminable, and cause the fundamental and paramount issues of a cause to be lost sight of. There was no error in the ruling.

Over appellant's objection and exception, the court allowed the appellee to testify that her father was in the army three years; that he came home from the army, at the close of the war, afflicted with consumption, and died

of that disease. It is earnestly contended that this ruling was erroneous.

No argument is made by appellee's counsel, in their able and exhaustive brief, in favor of the validity of this testimony, and its irrelevancy to the issues is practically conceded.

If it be claimed that the appellee, in response to the proof of bad reputation for morality, introduced by the appellant against her, had a right to show the circumstances of her early life and history, it is difficult to see how the patriotic acts of her father, in going to the war, and impairing his health for the benefit of his country, could, in the remotest degree, have thrown any light upon the question of the appellee's character. Manifestly the tendency of such evidence must be, if not to mislead the jury, at least to unduly excite and enlist their sympathy for the plaintiff. The case should have been tried upon the law and legitimate evidence alone. The courts must know judicially that not the least among the results of the civil war was and is the sympathy felt for those who participated in the same by risking their lives and sacrificing their health for what they believed to be a righteous cause. This sympathetic feeling of the general public is not confined to the ex-soldiers, but extends to the widows and children of those who lost their lives upon the field, or died from the effects of wounds or disease contracted in the service. That such sentiments are commendable, and indicative of patriotism, is no argument in favor of importing them as an element of evidence into a lawsuit of the character of this case. The only argument made by appellee's learned counsel in support of the ruling is that the testimony was harmless, because it did not show in what army or war the appellee's father served or contracted the disease of which he died.

We can not share this view of the probable effect of such testimony. The appellee testified that her father had

been dead about fifteen years; that he was sick about eight months; that in fact he never was well after he came out of the army; that he contracted consumption in the army, and died of consumption, and that he served three years in the army, and came home at the close of the war. She also stated in her testimony that she was twenty-seven years old; that she was born in Illinois, and had lived in Indiana ever since she was seven years of age, and that, at the time of her father's death, she and her parents resided at Parker, in Randolph County, Indiana, to which place they had moved from the country about the time her father "took sick." From these statements it is apparent that the war to which the appellee must have referred was the war of the rebellion, and the army must have been that of the United States.

The number of men who were enlisted in the Federal service from Indiana during the progress of the civil war exceeded 200,000, while the State of Illinois furnished a still larger number. On the other hand, the number of those who served in the confederate army from these States, is so insignificant that no statistics seem to have been compiled concerning them, and we think we are safe in saying that it is with rare exception that citizens are now found in the States named who were soldiers in the southern army. But whether the appellee's father fought under the banner of the Union or that of the south, and whether he died of disease contracted there or at home, is entirely foreign to the issues involved in this case, and proof of the same could only serve to inject into the trial matters calculated to bias the minds of the jury by exciting an undue sympathy for the party held up as one of the victims of that struggle. Such things have no place in the trial of a cause before a court or jury, unless they are legitimately in issue.

The overruling of the objection, in effect, placed the evidence objected to before the jury as proper for their

consideration in the case.    Where illegal evidence is im-
properly admitted, it will be presumed to have influenced
the result unless the contrary appears.    *Barnett* v. *Leonard,*
66 Ind. 422; *Baker* v. *Dessauer,* 49 Ind. 28; *Thompson* v.
*Wilson,* 34 Ind. 94.

The objection should have been sustained.

In his argument to the jury, one of the attorneys for
appellee made use of the following language:    "The de-
fendant does not rely on the evidence to defeat this action,
but on its influence.    I have heard it said on the streets,
here, more than once since this trial began, 'you can't
down the Journal in Hamilton county.'"

Against this statement the appellant's counsel at the
time protested and objected, and moved the court to re-
quire counsel to withdraw it from the jury, "which the
court refused to do, remarking in the presence of the jury
that the jury would be governed by the evidence in this
case, to which refusal of the court the defendant at the
time excepted, and said counsel for plaintiff did not with-
draw or modify said statement, but proceeded with his
address.    But when counsel for defendant was making
the closing argument to the jury, and after stating that
counsel for plaintiff had heaped wholesale abuse on de-
fendant and its counsel, Mr. Medsker, who was not pres-
ent to defend himself, and had maligned defendant's
witnesses whose characters they had not attempted to im-
peach, and then proceeded to argue that if a party desired
to vindicate his character in the courts, and to assail the
character of his accusers, he should bring his action at
home where the jury could be brought face to face with
the witnesses, and that the fact that plaintiff went away
from home to bring her action, while the evidence showed
that Joseph O. Lambert, who wrote the article complained
of lived in Delaware county, and by joining him as de-
fendant, the action might have been brought at Muncie,
showed that she was not seeking a vindication, but was

prosecuting the suit for the money there might be in it, and that she did not dare to sue at home and let the jury meet the witnesses face to face, the court, of its own motion, interrupted counsel in this part of the argument, and stated, in the hearing of the jury, that such argument was improper; that plaintiff had the right to bring her action in any court having jurisdiction, to which interruption and remarks of the court defendant's counsel at the time excepted."

The ruling of the court in the above-named particulars is assigned as a reason in the motion for a new trial, as is also the act of appellee's counsel in making said statement to the jury. The ruling is designated as "error of law occurring at the trial," and the alleged misconduct of the appellee's attorney, as "misconduct of the prevailing party."

We do not hesitate to declare that the court properly and justly checked the appellant's counsel in his remarks that appellee had not brought the action in the county of her own residence, which she might have done by joining Lambert as a party defendant. It was not legitimate argument. No evidence had been introduced upon the subject, and the statement was clearly beyond the scope of the issues, nor was it in response to anything that had been said by opposing counsel so far as the record discloses. It is the duty of the trial judge to regulate the argument, and to see that the counsel are held within the limits of legitimate debate. The judge is not a mere moderator, who sits in the case solely for the purpose of deciding disputed questions between the parties, but the law makes it his duty to see that a fair trial is had. We are unable to agree with appellant's counsel that they had a right to comment upon the fact that the suit was not commenced in the appellee's county of residence, and think the court was right in saying that she had the right to bring her action in any court that had jurisdiction.

On the other hand, we must confess that the question arising upon the ruling of the court relating to the conduct of appellee's counsel, is not so free from difficulty. Clearly it was beyond the pale of legitimate discussion for the appellee's counsel to insist to the jury, in proof of the assertion that the appellant relied upon its influence in the community to secure a verdict, that he had heard it said on the streets more than once since the trial began, that "you can't down the Journal in Hamilton county." There was not a particle of evidence before the jury that justified such a remark. We are not unmindful of the fact that it is a somewhat common occurrence for counsel, in the heat of debate, and in the zeal aroused by the advocacy of their client's cause, to make use of expressions not justified by the record. But if the practice has grown to be a too common one, it is none the less to be deprecated, and is one that should not be tolerated by the courts.

It can not be doubted by those who have had experience in the trial of jury causes that juries are sometimes, if not frequently, influenced by matters not legitimately connected with the issues before them. The sanction of such practices by the courts must inevitably tend, not only to bring about prejudicial results in particular cases, but to bring the entire system of jury trial into discredit. If the attorney's conduct may be palliated to an extent, by the zeal he is naturally supposed to entertain for the cause he is advocating, there can be but little excuse for its toleration by the court that presides at the trial, and is presumed to be free from such influences as affect the counsel, and none whatever for the approval thereof by the appellate tribunal that is entirely removed from the trial forum. It frequently happens that the party injured by the misconduct of opposing counsel fails to take advantage of the error by neglecting to obtain a ruling of the court upon the subject, or by not objecting and excepting to the refusal of the court to make a ruling, and thus places himself in a

position where he can not have the act giving rise to the injury reviewed on appeal. In such cases it has been held repeatedly, that, owing to his laches, he can have no redress, but where he invokes the decision of the trial court upon the subject, and that decision is against him, or where the court fails to do *all* it can do to redress the wrong done, the Appellate Court will give him relief, unless it appears affirmatively that a just and proper result was arrived at.

The rule upon the subject is clearly defined in *Grubb* v. *State,* 117 Ind. 277, by Coffey, J., as follows:

" Where counsel is guilty of misconduct, and the opposing party, at the time, objects, and the court, upon being asked to do so, neglects or refuses to take action in the matter, or to repair the injury to the satisfaction of the injured party, he can except and bring the question to this court. But in such cases, if the court does all in its power to relieve the party injured from the consequences of such misconduct, there is no action of the court to which an exception can be taken, and consequently nothing to be reviewed in this court. In such cases, if the injured party thinks that the injury is of such a character that it can not be repaired by any action of the court, he should move to set aside the jury, or take such other steps as he may think will secure to him a fair and impartial trial. If he fails to do this, and permits the case to proceed to final determination, he must be deemed to have waived all questions arising out of such misconduct."

This rule was followed in *Kern* v. *Bridwell,* 119 Ind. 226; *Staser* v. *Hogan,* 120 Ind. 207; *Drew* v. *State,* 124 Ind. 9; *White* v. *Gregory,* 126 Ind. 95; *Leach* v. *Ackerman,* 2 Ind. App. 91; *Mainard* v. *Reider,* 2 Ind. App. 115; *State, ex rel.,* v. *Taylor,* 5 Ind. App. 29, 31 N. E. Rep. 543.

In the case before us an objection was made to the statement of counsel, and the court was asked to have counsel withdraw it. The record shows that this objection was

overruled, and that the court refused to have the statement withdrawn, but simply remarked that the jury would be governed by the evidence. We are of the opinion that this action of the court was not only erroneous, but must result in the reversal of the judgment, even if there were no other errors committed. It seems to us that the motion of appellant's counsel, to have the remark withdrawn, which was certainly as little as the appellant had the right to ask, should have been sustained, or, what would have been equivalent to the same, the jury should have been directed, in certain and emphatic terms, to disregard it. But the mere observation of the court that the jury would be governed by the evidence, was not in the nature of an emphatic direction to them to disregard the statement, nor can it be treated as a ruling sustaining the appellant's objection. It was, at most, but an expression of the court's confidence in the judgment of the jury, or of an opinion that the jury would not be governed by anything but the evidence; but even if it be regarded as an instruction to be governed by the evidence, it is insufficient. The court, by its active refusal to interfere, in effect sanctioned the propriety of the statement without uttering so much as a word in disapproval of the same, and who can say that the jury was not influenced by it? The statement should have been eliminated from the consideration of the jury, in so far as it was possible to do so.

The rule that presumptions will be indulged in favor of the rulings of the trial court, can not be invoked where a material error is affirmatively shown to have been committed. *Campbell* v. *Maher,* 105 Ind. 383; *Nelson* v. *Welch,* 115 Ind. 270.

The case last cited was an appeal from a justice of the peace of a suit on account. In the argument of the case before the jury in the Circuit Court, the plaintiff's counsel, in his closing address, stated that the only object of the defense was to reduce the judgment obtained before

the justice five dollars and throw the plaintiff into the costs. The defendant objected to the statement, for the reason that it was improper and irrelevant, and brought before the jury that which had occurred in the verdict and judgment before the justice of the peace. The plaintiff's counsel thereupon stated to the court and jury that he did not remember the exact words used by him, but that if he had made the statement it was improper, and that he then withdrew it, and the jury should disregard it. The trial court made no ruling upon the question whatever. The judgment was reversed because the court did not promptly and explicitly direct the jury to disregard the statement.

In the course of his opinion, Mitchell, C. J., speaking for the court, said:

"Statements such as those set out in the bill are presumably injurious and prejudicial to the adverse party, and the burden is upon the party offending to show that no injury resulted, or that all such steps were taken to prevent injury as were proper under the circumstances." And further on the same learned judge says:

"When the party who is injured by the wrong calls for the intervention of the court by an objection, it will not do for the court to remain silent, leaving the matter of misconduct with the offending party and the jury. The court is bound to interpose when so called upon, and if an improper and injurious statement has been made without excuse, the effect of it should be erased from the minds of the jury then and there, by an emphatic and explicit admonition from the court. The jury should be made to understand that in making the statement counsel violated the propriety of his position, and that if they did not wholly disregard it they would violate their duty as jurors."

Elliott, J., in passing on the motion for a rehearing in that case, said:

"Where an attorney in addressing the jury makes a statement that he has no right to make, and that statement is of a material character, there is more than a harmless error. The error of the court in declining to interfere will require a reversal, unless it clearly appears that the verdict is right on the evidence. Where there is a conflict of evidence the error must be deemed prejudicial, and this must be presumed in the absence of the evidence."

In the case of *Bessette* v. *State*, 101 Ind. 85, the prosecuting attorney was permitted, over the defendant's objection, and by the silence of the court, to comment unfavorably on the appearance of the prisoner, as indicating a probability of guilt, and, also, to refer to a juror as having become prejudiced in the case. The evidence of guilt not being entirely clear and consistent, the cause was reversed on account of the court's failure to act when its intervention had become necessary.

In *Brow* v. *State*, 103 Ind. 133, which was a prosecution for selling intoxicating liquor to a person in a state of intoxication, the prosecuting attorney, in his address to the jury, stated "that he knew personally the saloon-keeper in this case, and that he was guilty of this, and he was sure of other crimes." The defendant's counsel objected, and moved the court to restrain counsel, and instruct the jury to disregard such remarks, "but the court passed the objections without ruling thereon, to which action of the court the defendant at the time excepted." It was held that this was error, and the judgment was reversed.

Other cases of similar rulings might be cited, but it is not necessary to multiply authorities.

The remark of the learned counsel that the appellant was relying for success upon its influence, might or might not have been proper under the evidence. But when he added to this the information he had derived on the street, to the effect that by reason of such influence the appellant

could not be defeated, no matter how meritorious the plaintiff's cause might be, he transcended the bounds of legitimate argument, and injected into the case an element of consideration wholly foreign to the issues involved, and calculated to prejudice the appellant's case with the jury.

An objection was interposed to the testimony of one Edward H. Calvert, whose deposition had been taken on behalf of the appellee, and, who, in answer to certain questions, had given evidence in favor of the appellee's good reputation. The testimony was objected to for the reasons that the questions asked the witness " did not define the reputation inquired about, whether for morality, chastity, or what not;" and for the further reason that general reputation was not inquired about, but reputation on a particular camp-ground, for a particular period, etc., and that the testimony offered was, therefore, incompetent, irrelevant, and immaterial, etc. The court overruled the objection, and the appellant excepted.

The questions and answers are as follows: ·

" Q.    Was you acquainted on the camp-ground with the reputation of Wilmina Pugh, during the time she remained there?

" A.    I think I was.

" Q.    Was that reputation good or bad?

" A.    Good."

Similar questions and answers were objected to in the depositions of other witnesses, and the objections were based upon like ground, and the ruling was the same..

In a work of recognized merit, it is said: " Character is a fact which is proved by another fact, general reputation. It can not be shown by evidence of particular and specific fact, but may be proved by negative testimony. It must, therefore, be proved by witnesses who are acquainted with the general reputation of the person whose character is in issue, and this acquaintance must be shown before the evidence will be admitted. The individual

opinion of the witness is inadmissible. The evidence in rebuttal must be of the same kind, whether by cross-examination or by independent testimony." 3 Am. and Eng. Ency. Law, 114, and notes.

The particular trait or kind of character to be proved, must, of course, be determined from the nature of the question in issue. Thus, in slander or libel, reference must be had to the particular offense charged in the slander or publication. *Church* v. *Drummond*, 7 Ind. 17; 3 Am. and Eng. Ency. Law, 114, note 2.

If we concede the propriety of proving the appellee's good character on the camp-ground, it still remains true that the witness was not asked as to her general character for virtue and chastity, or morality, but simply as to her reputation, without limit. We are of the opinion that the scope of the inquiry was too wide. It certainly could not be claimed to be a proper subject of proof to show the appellee's reputation for anything outside of the traits involved in the issue. One may have an excellent reputation for some things, and a very bad one for others. The investigation should have been confined to the appellee's general reputation for morality, virtue, and chastity.

The appellant complains of instructions given, and brings the questions made thereon properly before us. In the seventh instruction, the jury were told that if the publication was libelous, but was made without actual malice, and plaintiff has sustained no special damage, they should allow her only compensatory damages. The next instruction was as follows:

"*Eighth.* Compensatory damages are such as will pay the plaintiff for her expenses and trouble in carrying on this suit and disproving the alleged slanderous publication."

These instructions can not be sustained. They lay down the legal proposition that in the absence of actual malice and special damage the appellee could recover as compen-

sation the entire expenses of the present litigation. To what these expenses should be limited, and what she should be allowed for "trouble in carrying on this suit," the jury are not informed. The instructions are misleading, and tend to confuse the jury. If this class of damages were recoverable as "compensation," then there should be some evidence given to the jury in reference to the amount the plaintiff was reasonably required to incur as an outlay, and the court should limit the inquiry within defined boundaries. To permit the jury simply to approximate such compensation, without some tangible basis other than the probable expense, is to cast them adrift without rudder or compass.

The "expenses" may include counsel fees. If so it is not stated that such only could be recovered as were reasonably necessary, and we see no reason why, under the instructions, the appellee would not have the right to employ a score of attorneys at any price, and be compelled to pay their fees, whatever they might be in amount.

As a general rule in actions of tort, counsel fees are not recoverable, except in suits for malicious persecution. Our own Supreme Court has never passed upon the question to our knowledge, and though it would seem that in some of the states counsel fees may be recovered in some classes of tort other than malicious persecutions, we know of no cases where they are allowable as "compensation" in actions of libel and slander. Sedgwick on Dam., section 233, and cases cited.

Where they have been allowed, it seems to have been done as an element of punitive damages. *Linsley* v. *Bushnell*, 15 Conn. 225: *Taylor* v. *Morton*, 61 Miss. 24. Commenting on this subject, Mr. Sedgwick says: "And accordingly by the better opinion, no inquiry into counsel fees should be allowed, even in those actions of tort in which the jury may give exemplary damages." Sedgwick on Dam., section 234; see, also, 3 Sutherland on Dam.,

section 1206; *Hicks* v. *Foster*, 13 Barb. 663; *Day* v. *Woodworth*, 13 How. 362; *Flanders* v. *Tweed*, 15 Wall. 450; *Teese* v. *Huntingdon*, 23 How. 2.

In the case of *Hicks* v. *Foster*, *supra*, almost the precise question here involved was decided. In that case a charge to the jury "that they have a right to take into consideration the expenses to which the plaintiff has been put by being compelled to come into court to vindicate her character," was held reversible error.

Besides, the word "expenses" may include the costs in the case, and as these are a necessary incident to the recovery of any judgment for plaintiff, if the jury also allow for costs there would be a double compensation.

The jury have no right whatever to take into consideration the question of. costs, as that is a matter for the court, and, under our code, the costs follow as a consequence of the verdict. *Conner* v. *Winton*, 8 Ind. 315; Odgers on L. and S. (2 ed.), 296.

Other questions are presented, but as they may not arise again on another trial, we need not extend this opinion to consider them. Our conclusion is that the motion for a new trial should have been sustained.

Judgment reversed.

DAVIS and LOTZ, J. J., took no part in the decision of this case.

Filed April 14, 1893.