## ROBERTSON *v.* HAMILTON.

[No. 1,442.   Filed October 23, 1896.]

EVIDENCE.—*Res Gestae.*—*Slander.*—On the trial of an action for slander brought by a married woman, based upon a statement of the defendant that the plaintiff had been guilty of adultery with one C, the defendant produced a witness by whom he proved that sometime before the time of the alleged slander witness met the plaintiff and her husband in the public highway; that plaintiff was crying, and upon being asked by witness what was the matter, she replied that her husband could tell him; that after further conversation showing that there had been some trouble or misunderstanding between them, the plaintiff asked witness to take her husband and keep him over night.   Defendant offered to prove that after the witness had started away, and in the absence of the plaintiff, the husband told witness that his wife had confessed to having been guilty of adultery with C.   *Held,* that the evidence offered was not a part of the *res gestae,* and was inadmissible.   *pp. 330–332.*

SAME. — *Character.* — *Specific Acts.* — Evidence of specific acts of lascivious or immoral conduct of a woman five or six years prior to her alleged adultery with a man other than the one with whom such acts were committed, is not admissible to prove her bad character for chastity.   *p. 333.*

From the Vigo Superior Court. *Affirmed.*

*J. E. Lamb* and *J. T. Beasley*, for appellant.

*George W. Faris* and *S. R. Hamill*, for appellee.

DAVIS, C. J.—This was an action for slander. The gist of the complaint is that appellant falsely charged that appellee, a married woman, had illicit carnal intercourse with one Ed. Cummings.

The appellant answered in two paragraphs. First, justification, that appellee had "illicit carnal intercourse with one Ed. Cummings."

Second, general denial.

A trial by jury resulted in a verdict and judgment for $750.00 in favor of appellee.

We have read the voluminous record, including all the evidence given on the trial, in the light of the argument of learned counsel, and find two questions properly and ably presented for our consideration on this appeal.

1. The fifth and twelfth reasons for a new trial relate to the action of the court in refusing to permit the appellant to prove, by Sol. Craig, a conversation had by the witness with the husband of the appellee, in her absence, in which the appellee's husband told the witness that appellee had confessed to her husband that she had been guilty of having illicit carnal intercourse with Ed. Cummings.

It is not claimed that the statements or admissions of the husband to said Craig were at any time communicated to appellant or that his charge against appellee was based on her alleged confession to her husband.

The witness, Craig, testified that in the month of April, 1893, he met the appellee and her husband in the public highway in the vicinity of their residence; that her husband had been very sick with a severe at-

tack of the grippe for several weeks prior thereto and that he was then convalescing, but was not well and that the witness then believed that he was slightly off mentally, and that the witness could not say that he did not know what he was saying; and that the appellee was crying.

The witness said to her: "What is the trouble, Ollie?" She replied: "Charley can tell you." In the same connection she said: "I don't know what is the matter, he acts so strange, and he is wanting to go to Mattoon, and I don't want him to go, and he says he is going to leave," and that he had tried to kill himself that morning. This conversation was in the afternoon or evening. In the course of the conversation her husband said to her, "Ollie, I want you to tell Sol. now whether I am to blame for any of this trouble or not." Appellee answered that he was not. She asked the witness to take her husband home with him and keep him all night.

Appellee's husband got in the wagon with the witness and they drove away. Appellant's counsel then asked the witness this question: "After he got in the wagon with you tell the jury whether he made any statement as to the trouble and what it was about, whether he did or not?"

An objection of counsel for appellee was sustained to the question.

Counsel for appellant then offered to prove by the witness that as soon as appellee's husband got in the wagon with the witness he stated to the witness that his wife had confessed to him that she had betrayed him, that she had been too intimate with Ed. Cummings, and pointed out to the witness the place in the road where she had made the confession. The court excluded the evidence, and to which ruling appellant at the time excepted.

Counsel for appellant insist that the statements of appellee's husband were a part of the conversation begun with the appellee, and that they were admissible as part of the *res gestae.*

When the alleged confession was made by appellee, whether on that day or on some previous day is not disclosed. The statements of the husband to the witness in relation to the alleged confession of his wife were, in our opinion, no more than a mere narrative of a past occurrence, and therefore were not admissible on the trial in behalf of appellant as a part of the *res gestae.* *Parker* v. *State*, 136 Ind. 284; *Citizens' Street R. R. Co.* v. *Stoddard*, 10 Ind. App. 278; *Cleveland, etc., R. W. Co.* v. *Sloan*, 11 Ind. App. 401.

It is next insisted that she directed her husband to continue the conversation with the witness, and therefore that his statements to the witness were admissible in evidence against her.

The general rule is, that the admissions of a third person are admissible in evidence against a party who has expressly referred another to him for information regarding a disputed or uncertain matter. In such cases there must be a disputed or uncertain matter which is the subject of inquiry, and there must be a clear and direct reference to the third person for the desired information. In order to bind the party by the admission of a third person, the reference must have been made by the person sought to be bound with the definitely stated intent by the person making the reference, that the person making the inquiry should secure of the third person the desired information regarding a disputed or uncertain matter.

There is nothing in the conversation between appellee, her husband and the witness indicating that there was any matter in dispute between any of the parties.

The only indication of any trouble appears to have

been the fact that appellee was crying. The inquiry of the witness was prompted by reason of the uncertainty as to the cause of the trouble. So far as shown the witness had no interest in this uncertainty, and his inquiry appears to have been prompted solely by curiosity. The conversation in her presence, when considered as an entirety, strongly indicates that her crying was the result of the strange conduct of her husband, to which she referred, and that she was ignorant as to the cause of such conduct. She said in response to her husband's question that he was not to blame for the trouble. She did not, however, intimate to the witness that she was in any manner responsible for the trouble. In response to the question of the witness she said, "I don't know what is the matter, he acts so strange," etc. Her reference of the witness to her husband for information was not in direct terms with a definitely stated intent, but was permissive only in character. The substance of her statement to the witness was that she did not know what was the matter, but that her husband might explain the matter to the witness if he could. She did not intimate that she had made a confession to her husband which he was at liberty to communicate to the witness, and she did not refer the witness to her husband for information on such subject.

Whether such a confession made by a wife in confidence to her husband can in any case be proven in this manner is a doubtful question. In any event, in our opinion, the rule relied upon by counsel for appellant is not applicable under the facts and circumstances as disclosed by the record.

2. The sixth, seventh, and eighth reasons for a new trial all relate to the refusal of the court to allow the appellant to prove that in 1887 the appellee said that she dearly loved one Black, and that she thought more

of him that she did of her husband, and that on one occasion she threw her arms around his neck and kissed him. The witness was then a domestic in the service of appellee and her husband, and said Alf. Black was then living in the family and working for her husband.

This was five or six years prior to appellee's alleged acquaintance and illicit intercourse with said Ed. Cummings.

Counsel for appellant insist that the evidence was admissible as tending to establish her character for chastity and the probability that the appellee would have been guilty of the acts charged with Cummings. In other words, the contention is that in such cases the character of the woman for chastity may be attacked by proof of specific acts of lascivious or immoral conduct. Assuming that there may be cases in which specific acts of lascivious or immoral conduct may be proven there was no error in the ruling under consideration.

In deciding a similar question in *Indianapolis Journal Newspaper Co.* v. *Pugh*, 6 Ind. App. 510, this court, by Reinhard, C. J., said: "We do not think there was any error in this ruling. True, the appellee's character was put in issue. But this can be proved only by general reputation, and not by specific acts of immorality, wholly disconnected from the acts charged in the publication."

The fact that appellee may have had an undue affection for Alf. Black in 1887, or that she was then guilty of unbecoming conduct with him in the presence of others, did not tend to prove that she had illicit carnal intercourse with Cummings in 1892 or 1893.

The act with Black, which appellant offered to prove, was wholly disconnected from the conduct with Cummings.

On a careful reading of the evidence we are not favorably impressed with the merits of this action, but we fail to find any error in the record that would justify a reversal of the judgment of the trial court.

Judgment affirmed.